NORMA L. SNYDER *et al.*, Plaintiffs-Appellees, v. CURRAN TOWNSHIP, Defendant-Appellant.

Fourth District   No. 4—93—0714

Argued May 17, 1994.—Opinion filed August 5, 1994.—Rehearing denied November 9, 1994.

Jay S. Judge (argued), Kristine A. Karlin, Michael J. Toussaint, and Edward F. Dutton, all of Judge & James, Ltd., of Park Ridge, for appellant.

Barry O. Hines (argued) and R. Kurt Wilke, both of Barber, Segatto, Hoffee & Hines, of Springfield, for appellees.

JUSTICE STEIGMANN delivered the opinion of the court:

Defendant, Curran Township (Township), appeals from the denial of its post-trial motion for a judgment *n.o.v.* or a new trial in an action for personal injuries. In March 1993, a jury had awarded damages based on a verdict in favor of plaintiff Norma Snyder. For the reasons that follow, we reverse.

## I. BACKGROUND

In March 1987, Norma L. Snyder was driving east in the afternoon on Route 7 South, a narrow township road in rural Sangamon County. She failed to negotiate a sharp right bend in the road at the top of a hill, lost control of her van, and sustained severe injuries, including loss of her sight. On the left side of the roadway approximately 67 to 120 feet before the bend, defendant had erected a sign indicating a right "reverse turn." Plaintiffs alleged that this placement did not conform with the State manual advising placement of warning signs on the right side of the road and 425 feet in advance of a curve. The jury returned a verdict for plaintiff Norma L. Snyder for $1,077,000, which was reduced to $581,580 based on the jury's finding she was 46% contributorily negligent. The jury awarded plaintiff Dean Snyder nothing on his loss of consortium claim.

On appeal, defendant argues that (1) its decision regarding placement of the roadway warning sign was protected by discretionary immunity; (2) placement of the sign was not a proximate cause of Mrs. Snyder's injuries; and (3) the trial court erred by (a) admitting evidence of a prior accident, (b) refusing defendant's special interrogatory and jury instruction, and (c) submitting plaintiffs' instructions to the jury.

We conclude that defendant's sign placement was protected by discretionary immunity. Accordingly, we reverse the trial court's denial of defendant's motion for judgment *n.o.v.*

## II. ANALYSIS

In this negligence action, plaintiffs were required to prove that (1) defendant owed a duty of care, (2) the duty was breached, and (3) an injury resulted proximately caused by breach of that duty. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 420, 592 N.E.2d 1098, 1100.) Whether a duty exists must be determined as a matter of law. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382, 609 N.E.2d 290, 293.) In this case, if the evidence failed to disclose a duty owed to Mrs. Snyder under which liability could be imposed against defendant, then plaintiffs did not establish an essential element of their cause of action, and defendant is entitled to judgment in its favor as a matter of law. See *Nastasi v. United Mine Workers of America Union Hospital* (1991), 209 Ill. App. 3d 830, 837, 567 N.E.2d 1358, 1363.

■ Section 11—304 of the Illinois Vehicle Code (Vehicle Code) authorizes local authorities and road district highway commissioners to place and maintain traffic control devices to regulate, warn, or guide traffic in conformity with the State manual. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—304.) Pursuant to authority conferred under section 11—301 of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—301), the Department of Transportation adopted the Illinois Manual on Uniform Traffic Control Devices (Illinois Manual). (See 92 Ill. Adm. Code § 546.100 *et seq.* (Supp. 1986).) Requirements for the design, installation, or use of traffic control devices are indicated by the terms "shall," "should," or "may." The Illinois Manual defines these terms as "mandatory condition," "advisory condition," or "permissive condition," respectively. Illinois Manual § 1A—5, at 1A—4.

■ Sections 2—109 and 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) extend immunity to municipalities for the performance of discretionary functions. (Ill. Rev. Stat. 1987, ch. 85, pars. 2—109, 2—201.) These

functions are those unique to a particular public office requiring personal judgment, as distinguished from ministerial functions, which require obedience to legal orders in a prescribed manner, without regard to the propriety of the acts performed, and without the exercise of discretion. (See *Kennell v. Clayton Township* (1992), 239 Ill. App. 3d 634, 639, 606 N.E.2d 812, 816.) These sections of the Immunity Act provide as follows:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Ill. Rev. Stat. 1987, ch. 85, par. 2—109.

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Ill. Rev. Stat. 1987, ch. 85, par. 2—201.)

Accordingly, if provisions of the Illinois Manual applicable to placement of the "reverse turn" warning sign are mandatory, a ministerial duty arises to which the statutory immunities of sections 2—109 and 2—201 of the Immunity Act do not apply. See *Parsons v. Carbondale Township* (1991), 217 Ill. App. 3d 637, 645, 577 N.E.2d 779, 785; *Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 202, 565 N.E.2d 695, 701.

Plaintiffs claim that placement of the "reverse turn" sign on the left side of the road 67 to 120 feet before the curve did not conform to the Illinois Manual because it requires a right-hand placement 425 feet in advance of the curve. Regarding sign placement on the left-hand or right-hand side of the roadway, the Illinois Manual states as follows:

"Standardization of position cannot always be attained in practice; however, the general rule is to locate signs on the right-hand side of the roadway, where the driver is looking for them. *** Under some circumstances signs may be placed on channelizing islands or (as on sharp curves to the right) on the left-hand shoulder of the road, directly in front of approaching vehicles." (Illinois Manual § 2A—21.)

We see nothing in the above language which supports plaintiffs' claim that the Illinois Manual imposed a ministerial duty regarding sign placement which was "absolute, certain and imperative" (*Mower v. Williams* (1949), 402 Ill. 486, 492, 84 N.E.2d 435, 438; see also *Eck v. McHenry County Public Building Comm'n* (1992), 237 Ill. App. 3d 755, 762, 604 N.E.2d 1109, 1115, citing *City of Chicago v. Seben* (1897), 165 Ill. 371, 377-78, 46 N.E. 244, 245-46) or which obviated the exercise of judgment or discretion. The manual language expressly

provides for discretion in sign placement decisions, even suggesting the possibility of the very placement chosen by defendant in this case.

■ Section 2C—3 of the Illinois Manual provides a table for placement of advance warning signs, listing "suggested minimum sign placement distances," which are dependent upon the approach speed and deceleration required to negotiate physical conditions of the roadway. (Illinois Manual § 2C—3, at 2C—2.) Plaintiff's expert relied upon this table to determine that the minimum distance for placement of the sign was 425 feet in advance of the curve. Again, we note that no language in this section of the manual imposes a mandatory, ministerial duty. Instead, placement distances are merely "suggested" and require the exercise of judgment in assessing approach speed and deceleration. Neither section of the Illinois Manual includes the term "shall" or provides for the exactitude plaintiffs seek to impose upon defendant in erecting the warning sign. We cannot agree with plaintiffs' contention that deviations from advisory specifications, requiring the exercise of judgment for their implementation, amount to violations of a ministerial duty imposed upon defendant by the Illinois Manual. Accordingly, we conclude that the sign placement made here constitutes a discretionary municipal function immune from liability under sections 2—201 and 3—104 of the Immunity Act. Ill. Rev. Stat. 1987, ch. 85, pars. 2—201, 3—104.

Plaintiffs also argue that defendant violated section 11—304 of the Vehicle Code for failure to obtain "the written approval of the county engineer or superintendent of highways" prior to erecting the reverse turn warning sign. (See Ill. Rev. Stat. 1987, ch. 95¹/₂, par. 11—304.) However, in view of our determination that defendant's placement of the sign was discretionary, any failure to obtain written approval from the county engineer or superintendent of highways (if so required under section 11—304 of the Vehicle Code) does not affect the immunity conferred under sections 2—201 and 2—109 of the Immunity Act.

## III. CONCLUSION

Because we have determined as a matter of law that defendant had immunity for its placement of the right "reverse turn" sign, we need not address the other issues defendant raised on appeal. We reverse the trial court's order denying defendant's motion for judgment *n.o.v.*

Reversed.

McCULLOUGH, P.J., concurs.

JUSTICE LUND, dissenting:

The majority opinion is in direct conflict with the fifth district opinion in *Parsons*. The majority opinion is saying that a township road commissioner can decide to install a road warning sign and, in doing so, is absolutely protected from liability, as is the township, regardless of how and where the sign is installed.

Defendant's brief (on page 70) includes the following:

"In addition, section 11—304 is not applicable to the facts of this case because the reverse turn sign is only a warning sign, not a traffic control or regulatory sign. Section 11—304 provides that all traffic-control devices shall conform to the Uniform Manual and shall be justified by traffic warrants stated in the Manual. However, the traffic warrants in the Manual only apply to the placement of regulatory signs (*e.g.*, stop signs, yield signs and load limit signs) but not to the placement of a warning sign such as a reverse turn sign. Therefore, section 11—304 has no applicability to this case since there is no requirement that warning signs such as the reverse turn sign be subject to the written approval of the County Superintendent of Highways."

This is poppycock. Section 11—304 of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95$^1$/2, par. 11—304) provides as follows:

"Local traffic-control devices. Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual. Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the County Superintendent of Highways."

The only sensible reading of this section requires "traffic control devices" to mean devices that regulate, warn, or guide traffic. Of course, the safety of drivers and passengers is affected by warning signs as much as actual controls.

I recognize that section 3—104 of the Immunity Act (Ill. Rev. Stat. 1987, ch. 85, par. 3—104) protects the public entity for "failure to initially provide regulatory traffic control devices." It is error to extend this immunity, once the need for a control device is recognized and installed. While the immunity can be somewhat justified because of the failure to recognize the need, once it is recognized the failure to reasonably react is hardly justified. The traffic control device here was a sign warning of an impending sharp turn. Should it have been placed on the wrong side of the road a short distance from the curve?

Our brethren in the fifth district were correct. I urge the supreme court to correct the errors of the majority.