NORMA L. SNYDER *et al.*, Appellants, v. CURRAN
TOWNSHIP, Appellee.

*Opinion filed October 26, 1995.*

MILLER, J., took no part.
BILANDIC, C.J., dissenting.

Barber, Segatto, Hoffee & Hines, of Springfield
(Barry O. Hines and R. Kurt Wilke, of counsel), for appellants.

Judge & James, Ltd., of Park Ridge (Jay S. Judge,
Kristine A. Karlin, Michael J. Toussaint and Gregory R.
James, of counsel), for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Following a trial in the circuit court of Sangamon County, the jury returned a verdict in favor of plaintiff Norma L. Snyder for personal injuries she sustained in an automobile accident. Defendant, Curran Township, filed a post-trial motion for a judgment *n.o.v.* or, in the alternative, for a new trial, which the circuit court denied. The appellate court reversed the trial court's denial of defendant's motion, finding that the defendant owed no duty to the plaintiffs as a matter of law. (267 Ill. App. 3d 174.) We granted plaintiffs' petition for leave to appeal (145 Ill. 2d R. 315) to address whether the doctrine of discretionary immunity provides absolute immunity to municipalities for the negligent placement of traffic warning devices. We conclude that it does not and, accordingly, we reverse.

## BACKGROUND

In March of 1987, Norma L. Snyder was driving east on Route 7 South, a narrow township road in rural Sangamon County. After failing to successfully negotiate a sharp right bend in the road at the top of a hill, she lost control of her van. She sustained severe injuries, including her permanent loss of sight. In their subsequent action against defendant, Curran Township, plaintiffs, Norma L. Snyder and her husband, Dean L. Snyder, alleged that its failure to place a sign warning of the curve in conformity with the State manual was the proximate cause of her accident.

At trial, plaintiffs' expert testified that, although the State manual required defendant to place the warning sign on the right side of the road and 425 feet in advance of the curve, the defendant placed the sign on the left side of the roadway, approximately 67 to 120 feet before the curve. (This range is set forth due to the parties' disagreement over the true distance: plaintiffs contend that

the sign was placed 67 feet before the curve, while defendant contends that the sign was placed 120 feet before the curve.) The Curran Township highway commissioner testified that he posted the right reverse turn sign because the curve was dangerous. He also testified that he did not consult the State manual prior to posting the warning sign; rather, he placed the sign where he thought it would be most obvious to motorists.

After trial, the jury returned a verdict for plaintiff Norma L. Snyder for $1,077,000, which was reduced to $581,580 based on the jury's finding that she was 46% contributorily negligent. The jury awarded plaintiff Dean L. Snyder nothing for his loss of consortium claim. Curran Township appealed.

The appellate court, with one justice dissenting, concluded that defendant's sign placement was protected by discretionary immunity and that, as a result, defendant owed no duty to plaintiffs as a matter of law. The appellate court reversed the trial court's denial of defendant's motion for judgment *n.o.v.* 267 Ill. App. 3d at 176.

## ANALYSIS

Sections 2—109 and 2—201 of the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) grant immunity to public entities for the performance of discretionary functions. These sections provide:

> "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2—109 (West 1992).

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2—201 (West 1992).

Defendant's chief contention is that its decision as

to where to place the warning sign at issue is wholly discretionary and therefore within the ambit of these immunity provisions.

Plaintiffs counter, however, that the decision where to place a sign is not discretionary because section 11—304 of the Illinois Vehicle Code mandates compliance with the State manual in erecting warning devices. Section 11—304 of the Vehicle Code provides:

"Local traffic-control devices. Local authorities and road district highway commissioners in their respective maintenance jurisdiction shall place and maintain such traffic-control devices upon highways under their maintenance jurisdiction as are required to indicate and carry out the provisions of this Chapter, and local traffic ordinances or to regulate, warn, or guide traffic. *All such traffic control devices shall conform to the State Manual and Specifications and shall be justified by traffic warrants stated in the Manual.* Placement of traffic-control devices on township or road district roads also shall be subject to the written approval of the county engineer or superintendent of highways." (Emphasis added.) 625 ILCS 5/11—304 (West 1992).

Defendant acknowledges that section 11—304 mandates compliance with the State manual.[1] However, defendant contends that the language of the Illinois Manual itself suggests that a governmental official may use his discretion in erecting these warning devices. Defendant points to the introductory section of the Illinois Manual, in which the requirements for the design, installation or use of traffic control devices are indicated by the terms "shall," "should," or "may." The Illinois Manual defines these terms as "mandatory condition,"

---

[1]Pursuant to the authority conferred under section 11—301 of the Vehicle Code (625 ILCS 5/11—301 (West 1992)), the Department of Transportation adopted the Illinois Manual on Uniform Traffic Control Devices (see 92 Ill. Adm. Code § 546.100 *et seq.* (Supp. 1986)), which shall hereinafter be referred to as the Illinois Manual.

"advisory condition," or "permissive condition," respectively. (Illinois Manual § 1A—5.) With respect to the placement of the warning sign at issue here, the Illinois Manual provides, in pertinent part:

"§ 2A—21 Standardization of Location
Standardization of position cannot always be attained in practice; however, the general rule is to locate signs on the right-hand side of the roadway, where the driver is looking for them. On wide expressways, or where some degree of lane-use control is desirable, or where space is not available at the roadside, overhead signs are often necessary. *Signs in any other locations ordinarily should be considered only as supplementary to signs in the normal locations.* Under some circumstances signs may be placed on channelizing islands or (as on sharp curves to the right) on the left-hand shoulder of the road, directly in front of approaching vehicles. A supplementary sign located on the left of the roadway is often helpful on a multi-lane road where traffic in the right-hand lane may obstruct the view to the right." (Emphasis added.) (Illinois Manual § 2A—21.)

Subsequently, in the section entitled "Placement of Warning Signs," the Illinois Manual provides:

"Warning signs *shall* be erected in accordance with the general requirements for sign position as described in Section 2A—21 to 29." (Emphasis added.) Illinois Manual § 2C—3.

Defendant suggests that these provisions, taken together, expressly allow for the highway commissioner's exercise of discretion in placing warning signs. The appellate court agreed, finding that nothing in the language of the Illinois Manual imposed a mandatory, ministerial duty. Thus, it ruled that defendant's decision regarding placement of the warning sign was discretionary and was immune from liability pursuant to section 2—201 of the Immunity Act. We disagree.

Initially, we question defendant's contention that the relevant sign placement language in the Illinois Manual is merely "permissive." Although the Illinois Manual concedes that uniformity in sign placement can-

not always be achieved, section 2A—21 does make clear that signs in any location other than the right-hand side of the road or overhead the road should only be considered as *supplementary* to signs in these standard locations. Moreover, the Illinois Manual states that warning signs "shall" be placed in accordance with the general placement requirements of section 2A—21. In short, we do not perceive the same degree of latitude in the Illinois Manual which defendant perceives. Nothing in section 2A—21 contemplates locating a warning sign solely on the left-hand side of the roadway, as occurred in the instant case.[2]

In addition to placing a warning sign only on the left-hand side of the roadway, plaintiffs also set forth other examples of the defendant's noncompliance with the Illinois Manual at trial. Section 2C—3 of the Illinois Manual provides a table for the placement of warning signs, which lists "suggested minimum sign placement distances." (Illinois Manual § 2C—3.) Plaintiffs' expert, relying on this table, testified that the warning sign should have been placed 425 feet in front of the curve, instead of the distance of 67 to 120 feet where the warning sign was posted. Plaintiffs also contended at trial that defendant did not, pursuant to section 11—304 of the Vehicle Code, receive written approval from the

---

[2]The appellate court indicated that the Illinois Manual suggested "the possibility of the very placement chosen by defendant in this case." (267 Ill. App. 3d at 178.) This is simply erroneous. The Illinois Manual states that, on sharp curves to the right, a sign may be placed "on the left-hand shoulder of the road, *directly in front of* approaching vehicles." (Emphasis added.) (Illinois Manual § 2A—21.) The sign in the instant case was merely placed on the left-hand side of the road; it was not placed directly in front of the approaching vehicle. Parenthetically, it is obvious why the Illinois Manual contains these general placement requirements: a sign placed solely on the left-hand side of the road could easily be concealed by an approaching vehicle.

county superintendent of highways prior to the place-ment of the sign in question.[3] See 625 ILCS 5/11—304 (West 1992).

In light of the applicable regulations and statutes, we agree with the plaintiffs that the issue of compliance or noncompliance with the Illinois Manual was a ques-tion properly before the jury. Section 11—304, by mandating compliance with the Illinois Manual, estab-lishes defendant's duty of reasonable care. Whether that duty was breached is a jury question, turning on an ex-amination of the applicable provisions of the Illinois Manual and the facts of a particular case. To counte-nance defendant's interpretation of the statutes and regulations would require this court to hold that a government official complies with section 11—304 of the Vehicle Code even if that official ignores the Illinois Manual and places a traffic control device upside down, behind a tree, or anywhere else he chooses. Such a hold-ing would render both section 11—304 of the Vehicle Code and the regulations within the Illinois Manual virtually meaningless.

Therefore, it was error for the appellate court to hold that discretionary immunity abrogates the duty established in section 11—304 of the Vehicle Code, which mandates that all traffic control devices conform to the State manual. In large part, the appellate court's erroneous conclusion rested on an impermissibly expansive definition of discretionary immunity. For instance, its reliance on *Mower v. Williams* (1949), 402 Ill. 486, which characterized ministerial duties as duties which are "absolute, certain, and imperative," was misplaced. In *Mower*, the defendant, a State employee,

---

[3]Defendant disputes the plaintiffs' assertions with respect to both the distance table and written approval. We do not pass on the merits of these disagreements since we conclude that they were properly within the province of the jury.

drove a State-owned snowplow into an intersection directly in front of plaintiff's automobile. This court held that the employee was immune from liability because driving the truck was a discretionary activity: the employee was left to his own judgment as to where and when he would perform his duties and as to the manner in which he would use the State-owned equipment. *Mower*, 402 Ill. at 493.

The opinion of the appellate court below reasoned, therefore, that unless a specific rule, statute, or legal order mandates a certain and absolute course of conduct, a government official can characterize his course of conduct as discretionary and, therefore, immune from liability in tort. It is precisely this faulty reasoning which was advanced in *Mower*. This court criticized the *Mower* approach in *Hering v. Hilton* (1958), 12 Ill. 2d 559, and we reject the *Mower* approach again today.[4]

The common law recognized the distinction between discretionary duties, the negligent performance of which does not subject a municipality to tort liability, and ministerial duties, the negligent performance of which can subject a municipality to tort liability. (See, *e.g.*, *City of Chicago v. Seben* (1897), 165 Ill. 371.) Although discretionary immunity has been codified in section 2—201 of the Immunity Act, cases considering this statute have continued to employ the common law definitions of discretionary and ministerial functions. See *Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 200.

---

[4]Notwithstanding the criticism which has been leveled against *Mower*, and the fact that several appellate court decisions have suggested that it has been overruled (see, *e.g., American Family Insurance Co. v. Seeber* (1991), 215 Ill. App. 3d 314), defendant contends in its brief that it remains good law. To the extent that there is any lingering doubt as to the import of this court's language in *Hering* or the opinion herein, we today expressly hold that *Mower v. Williams* is overruled.

However, this court has long recognized that the distinction between discretionary and ministerial functions resists precise formulation, and that the determination whether acts are discretionary or ministerial must be made on a case-by-case basis. (*Johnston v. City of Chicago* (1913), 258 Ill. 494, 497; *Johnston v. City of East Moline* (1950), 405 Ill. 460, 466.) Indeed, Prosser notes that this distinction is "finespun and more or less unworkable. *** 'It would be difficult to conceive of any official act *** that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.' " (W. Prosser, Torts § 132, at 988-90 (4th ed. 1971), quoting *Ham v. County of Los Angeles* (1920), 46 Cal. App. 148, 162, 189 P. 462, 468.) Notwithstanding the *ad hoc* nature of these determinations, it has been recognized that discretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. See *Larson v. Darnell* (1983), 113 Ill. App. 3d 975.

We believe that, under the facts presented here, the duties of the defendant are more properly characterized as ministerial than discretionary, for the duties are performed under a given set of facts in a prescribed manner. Where, as in the instant case, tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as "discretionary."

We are also mindful of the long-standing common law principle that, although a governmental agency has discretion in determining whether to perform a public work or make an improvement, once the decision to perform the work is made, it must be done with reason-

able care and in a nonnegligent manner. (*Seben*, 165 Ill. at 378.) For example, in *Baran v. City of Chicago Heights* (1969), 43 Ill. 2d 177, the plaintiff was injured when he drove his car past the dead end of Ashland Avenue and crashed into a tree. He sued the City of Chicago Heights, alleging that the intersection where the avenue ended was improperly lighted. On appeal of a jury award in favor of the plaintiff, the City of Chicago Heights contended that it did not owe a duty to plaintiff, nor was its judgment in placing the street light subject to review unless the court could say it was so dangerous that its construction would be negligence as a matter of law. (*Baran*, 43 Ill. 2d at 180.) This court rejected that argument:

> "The court has long recognized that where a city under-takes to provide lights, it is liable for injuries which result from deficient or inadequate ones. [Citations.] In holding a city responsible for injuries thus caused the court is not reviewing the city's discretion in selecting a plan. *** Nor is it deciding what the 'best' kind of improvement may be. It is simply saying that when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do." (*Baran*, 43 Ill. 2d at 180-81.)

Likewise, once the instant defendant acted on the determination that the curve in the roadway was of sufficient severity to warn motorists by erecting a right reverse turn sign, defendant had a duty to erect it in a nonnegligent manner in accordance with the Illinois Manual.

Our conclusion that discretionary immunity does not insulate defendant from liability in the instant case is further buttressed by other provisions in the Immunity Act. These provisions provide:

> "§ 3—103. (a) A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to pub-lic property where the plan or design has been approved in advance of the construction or improvement by the

legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that is not reasonably safe." 745 ILCS 10/3—103(a) (West 1992).

"§ 3—104. Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to *initially* provide regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." (Emphasis added.) 745 ILCS 10/3—104 (West 1992).

"§ 3—105. ***

(b) Without implied limitation, neither a local public entity nor a public employee is liable for any injury caused by the failure of a local public entity or a public employee to upgrade any existing street, highway, alley, sidewalk or other public way or place, or the ways adjoining any of the foregoing, or the signals, signs, markings, traffic or pedestrian control devices, equipment or structures on or near such street, highway, alley, sidewalk or other public way or place, or the ways adjoining any of the foregoing from the standards, if any, which existed at the time of the original dedication to, or acquisition of, the right of way of such street, highway, alley, sidewalk or other public way or place, or the ways adjoining any of the foregoing, by the first local public entity to acquire the property or right of way, to standards which are or may be applicable or are imposed by any government or other person or organization between the time of such dedication and the time of such injury." (745 ILCS 10/3—105(b) (West 1992).)

Taken together, these well-delineated sections indicate that the General Assembly has carefully considered the liability of public entities with respect to traffic control

devices. Section 3—103(a) of the Immunity Act indicates, for instance, that if the defendant had received prior written approval from the county superintendent of highways prior to the placement of the warning sign, pursuant to section 11—304 of the Vehicle Code, or had erected the sign in compliance with the standards enunciated in the Illinois Manual, it would have been immune from liability.

Moreover, it is axiomatic that, since the Immunity Act was enacted in derogation of the common law, it must be construed strictly. Through its overly broad interpretation of discretionary immunity, the appellate court's analysis represents an unwarranted judicial expansion of the legislatively established parameters of municipal immunity with respect to traffic control devices. Indeed, the crux of defendant's oral argument was that it is illogical for the Immunity Act to absolutely immunize a public entity's initial failure to erect a traffic warning device (see 745 ILCS 10/3—104 (West 1992); *West v. Kirkham* (1992), 147 Ill. 2d 1), but fail to extend this absolute immunity once the traffic warning device is erected. What defendant and the appellate court failed to recognize, however, is that it is not for the courts to extend this statutory immunity or to fill the perceived interstices of the Immunity Act: that is strictly the province of the General Assembly.

Since the appellate court determined as a matter of law that defendant had immunity for its placement of the warning sign, it did not address the other issues raised by defendant on appeal. Accordingly, we reverse and remand this action to the appellate court for it to consider the other arguments raised by defendant.

*Reversed and remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.

478

CHIEF JUSTICE BILANDIC, dissenting:

The majority opinion correctly notes that the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) grants immunity to public entities for the performance of discretionary functions (745 ILCS 10/2—109, 2—201 (West 1992)). I believe, however, that the majority seriously errs in determining that the act in question here was not a discretionary function. Accordingly, I dissent.

Analysis reveals that the highway commissioner's decision where to place the reverse turn sign cannot properly be characterized as ministerial in this case. This court described the nature of a "traffic planner['s]" job in *West v. Kirkham* (1992), 147 Ill. 2d 1. There, in discussing the expressed purpose of the Immunity Act, we stated:

> "The 'operation of government' necessarily encompasses the policy decisions made by a municipality; that is, those decisions which require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests. The decision whether to install a traffic signal requires the municipal traffic planner to balance a host of competing interests, among them, safety, convenience and cost. In the instant case, the City could have determined that the competing interests were best served by installing a left turn arrow for northbound traffic on Lincoln Avenue, but not for southbound traffic on Lincoln Avenue. The fact that Bradley Avenue is unpaved on the east side of Lincoln Avenue may have resulted in the conclusion that left turns onto eastbound Bradley Avenue would be too infrequent to justify the expenditure of tax dollars for a left turn arrow. Regardless, this is not the sort of decision that should be second-guessed by the courts. Were such second-guessing permitted, the traffic planner would be more concerned with avoiding possible litigation than with using his best judgment to properly balance the competing interests." (*West*, 147 Ill. 2d at 11-12.)

This language accurately portrays a traffic planner's

function in our complex society. The traffic planner does not "perform on a given state of facts in a prescribed manner," as the majority opinion would have us believe. Rather, the traffic planner is continually making judgment calls as to what solution will balance and best serve the many competing interests, including safety, convenience, and cost.

In the present case, the township's highway commissioner could have determined that the competing interests were best served by purchasing a single sign for installation at the curve on Route 7 South. The commissioner then made a judgment call as to the best placement for the sign. The record shows that he placed the reverse turn sign between 67 and 120 feet before the curve on the left side of the road, next to the driver's eye. The commissioner testified that he believed this to be the most obvious place for the driver to see the sign. Parenthetically, the majority opinion emphasizes the commissioner's testimony that the curve was dangerous. His specific trial testimony, however, was that the curve may be dangerous to a driver who is inattentive. Regardless, as in *West*, this is not the type of decision that should be second-guessed by the courts. The commissioner's decision to place the reverse turn sign where he did required an exercise of official judgment. Therefore, it was a discretionary function, entitled to immunity. See *Greeson v. Mackinaw Township* (1990), 207 Ill. App. 3d 193, 202 (holding that, apart from any traffic manual, a highway commissioner's decision to place an S-curve warning sign precisely where he did required the exercise of judgment and was thus a discretionary function).

Assuming, *arguendo*, that this case turns on an interpretation of language in the Illinois Manual on Uniform Traffic Control Devices (92 Ill. Adm. Code § 546.100 *et seq.* (Supp. 1986)), the majority's conclusion

that the commissioner's sign placement was a ministerial function under that manual is nonetheless incorrect. The Illinois Manual itself plainly states which provisions are mandatory and which are not. Section 1A—5, entitled "Meanings of 'Shall,' 'Should' and 'May' " provides:

"1A—5 Meanings of 'Shall,' 'Should' and 'May'

In the Manual sections dealing with the design and application of traffic control devices, the words 'shall,' 'should' and 'may' are used to describe certain specific conditions concerning these devices. To clarify the meanings intended in this Manual by the use of these words, the following definitions apply:

1. SHALL—a *mandatory* condition. Where certain requirements in the design or application of the device are described with the 'shall' stipulation, it is mandatory when an installation is made that these requirements be met.

2. SHOULD—an *advisory* condition. Where the word 'should' is used, it is considered to be advisable usage, recommended but not mandatory.

3. MAY—a *permissive* condition. No requirement for design or application is intended." (Emphasis in original.) (Illinois Manual § 1A—5.)

This section leaves no doubt that only where the Illinois Manual utilizes the word "shall" are public officials arguably performing ministerial duties. In all other cases, public officials are fully expected to make a judgment call in determining whether to apply the Illinois Manual's advice to the particular road conditions involved. This requires the public official to exercise discretion, as discussed above.

The provisions of the Illinois Manual relevant to this case are not "shall" sections. Plaintiffs' expert traffic engineer opined that the reverse turn sign should have been placed on the right-hand shoulder; however, he admitted that the Illinois Manual provides guidelines only and did not mandate such a placement. Section 2A—21, the controlling provision, states:

"2A—21. Standardization of Location

*Standardization of position cannot always be attained in practice*; however, *the general rule* is to locate signs on the right-hand side of the roadway, where the driver is looking for them. On wide expressways, or where some degree of lane-use control is desirable, or where space is not available at the roadside, overhead signs are often necessary. Signs in any other locations *ordinarily* should be considered only as supplementary to signs in the normal locations. *Under some circumstances signs may be placed on channelizing islands or (as on sharp curves to the right) on the left-hand shoulder of the road, directly in front of approaching vehicles.* A supplementary sign located on the left of the roadway is often helpful on a multi-lane road where traffic in the right-hand lane may obstruct the view to the right." (Emphasis added.) (Illinois Manual § 2A—21.)

A review of this section's plain language reveals that there is no "shall" provision directing that the sign in question be placed on the right-hand side of the road. Rather, locating signs on the right-hand shoulder is just "ordinarily," "the general rule" and, "[u]nder some circumstances[,] signs may be placed *** on the left-hand shoulder of the road, directly in front of approaching vehicles." This section further explains why this "general rule" is not mandatory: "Standardization of position cannot always be attained in practice." Consequently, I agree with the appellate court that section 2A—21 does not mandate precise sign placement. In fact, by setting forth indefinite guidelines, section 2A—21 acknowledges that traffic planners must analyze road conditions and make a judgment call each time a traffic sign is installed. Therefore, the sign placement at issue here was a discretionary function even in light of the applicable provisions of the Illinois Manual. See *Francis v. Mills* (1991), 214 Ill. App. 3d 122, 125 (holding that the decision of township employees not to replace or upgrade an existing traffic control device was a discretionary func-

tion because the applicable manual did not mandate a certain course of conduct).

The majority, in an attempt to bolster its conclusion that the sign placement was ministerial, further notes another so-called example "of the defendant's noncompliance with the Illinois Manual." (167 Ill. 2d at 471.) The majority then discusses section 2C—3 of the Illinois Manual. The majority neglects to point out that this section is not mandatory, a point which even plaintiffs' expert conceded at trial. Section 2C—3 lists "suggested minimum sign placement distances" (Illinois Manual § 2C—3) and is thus merely recommended usage. Therefore, this section does not support the majority's conclusion. Section 11—304 of the Illinois Vehicle Code (625 ILCS 5/11—304 (West 1992)) is also irrelevant to the majority's conclusion because the majority declines to address whether it applied to the sign placement in question. See 167 Ill. 2d at 472.

Lastly, the majority implies that to countenance the township's interpretation of the Illinois Manual would be absurd because a government official would be immunized for "plac[ing] a traffic control device upside down, behind a tree, or anywhere else he chooses." (167 Ill. 2d at 472.) This suggestion, with its exaggerated scenarios, flies in the face of the Immunity Act. The Immunity Act expressly grants immunity to public entities and officials for the performance of discretionary functions, *even if negligent.* (745 ILCS 10/2—109, 2—201 (West 1992).) Accordingly, the proper analysis here focuses simply on whether the Immunity Act's grant of discretionary immunity applies in this case. It is not for this court to rewrite the Immunity Act and replace its judgment for that of the General Assembly's.

In conclusion, I would affirm the appellate court and hold that the commissioner's placement of the sign was a discretionary function. Under the Immunity Act, both

he and the township are provided immunity from tort liability for his performance of this discretionary function, even if negligent.