2023 IL App (2d) 230009-U
No. 2-23-0009
Order filed February 14, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| JOSEPH CHAVEZ, | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 16-L-115 |
| VILLAGE OF KIRKLAND, an Illinois | ) | |
| Corporate Municipality, and ANDREW | ) | |
| HOLMES, | ) | Honorable |
| | ) | Bradley J. Waller, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Kennedy and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred when it entered judgment for the plaintiff and against the defendants on defendants' affirmative defense of discretionary immunity. Defendants are entitled to discretionary immunity as a matter of law. Reversed.

¶ 2    At issue in this appeal is whether the trial court erred when it entered judgment in favor of the plaintiff and against the defendants on defendants' affirmative defense of discretionary immunity. On December 6, 2022, the matter proceeded to jury trial and at the close of evidence, both parties moved for directed verdict on the issue of discretionary immunity under sections 2-109 and 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act. 745

ILCS 10/2-109, 2-201 (West 2022). The trial court entered judgment in favor of the plaintiff and against the defendants, finding that defendant Andrew Holmes was not entitled to discretionary immunity when he conducted the TASER training. The jury subsequently returned a verdict in the amount of $1,402,862.50 for plaintiff. Defendants filed no post-trial motions but filed a timely notice of appeal from the denial of the directed verdict. For the following reasons, we (1) reverse the trial court's judgment entering the jury's verdict for plaintiff and (2) reverse the trial court's judgment on the motion for directed verdict on the issue of discretionary immunity.

¶ 3                                I. BACKGROUND

¶ 4     On November 8, 2016, plaintiff, Joseph Chavez, filed a civil action against the Village of Kirkland, for injuries he sustained during a TASER training conducted by Holmes. Plaintiff's complaint alleged that the Village was negligent in numerous ways while conducting the TASER training and, as a result, plaintiff was injured. Plaintiff filed an amended complaint on July 12, 2017, adding Andrew Holmes as a defendant. The amended complaint alleged that Holmes was negligent in the following ways: (1) by failing to conduct TASER training in a reasonably safe manner and comply with normative rules for safety that consider its participants' health and well-being; (2) by failing to supervise, monitor, and catch the plaintiff after being shot with the TASER so that he would not collapse onto the solid ground beneath him; (3) by failing to place mats or other soft surfaces around the plaintiff so that any fall would be protected by a soft, padded surface rather than a solid surface; and (4) by failing to conduct TASER training in a reasonably safe manner in consideration for its participants' safety. Throughout the pendency of the case, the trial court denied several of defendants' motions attempting to dispose of the case on the basis of discretionary immunity and other statutory immunities.

¶ 5    On December 6, 2022, the matter proceeded to a jury trial. Plaintiff called Paul Lindstrom, William Kroncke, David Gibson, Steven Rabin, Joseph Chavez, Laura Lampton, and Melissa Payne Wagner as witnesses in his case-in-chief. Plaintiff also read the discovery deposition of Sherry Chavez into the record, as she died before trial. Relevant to this appeal is the testimony of Paul Lindstrom.

¶ 6    Lindstrom testified that he was the chief of police for the Village on December 5, 2015. In his role as chief, he sent Andrew Holmes to be certified to instruct TASER training. It was his understanding that a TASER instructor would need to follow TASER corporation's guidelines. For the TASER training on December 5, 2015, Chief Lindstrom testified that he required the officers in attendance to be tased, as he "[thought] it [was] important for them to experience what it is." He also testified that he was presented with potential dates for the training and approved opening the training to other departments. Chief Lindstrom testified that he did not control the specifics of the class. Rather, Sergeant Parker, the head of training at the Village, would handle the specifics, in accordance with TASER guidelines. Chief Lindstrom further testified that although Andrew Holmes did not determine police department policies or procedures, he would determine what equipment was needed for training, how to obtain the equipment needed for training, where the training was going to take place, how the training would be conducted, and whether an attendee passed or failed the training. Holmes would also help develop the Village TASER policies by relaying information he received during his TASER instructor training.

¶ 7    At the close of plaintiff's case-in-chief, defendants moved for a directed verdict. In support of their motion, defendants argued that (1) plaintiff's claims against defendant Holmes were barred by the statute of limitations, (2) defendants were entitled to discretionary immunity pursuant to 745 ILCS 10/2-201, (3) plaintiff's claims are barred by the Workers' Compensation Act as he was

a borrowed employee loaned to the Village, and (4) plaintiff failed to prove that the absence of a mat was the proximate cause of plaintiff's injury. The trial court took the motion under advisement and defendants proceeded with their case-in-chief.

¶ 8     Defendants called Chris Hathcoat, Venkat Seshadri, Robert Smith, James Radke, Victoria Gates, Jerry Staton, and Andrew Holmes. Relevant to this appeal is the testimony of Andrew Holmes.

¶ 9     Andrew Holmes testified that he worked as a part-time police officer with the Village and served as the Village's TASER instructor. In 2015, the Village sent him to a TASER instructor certification course to become certified. In his capacity as the Village's TASER instructor, Holmes was responsible for reviewing the village's written policies regarding TASER use and for organizing and implementing the TASER training program for the Village. This included determining a location for TASER training that had appropriate classroom space, had the proper presentation equipment for the classroom portion of the session, and sufficient safe space to conduct exposures and discharges. Regarding the December 15, 2015, TASER training, Holmes testified that he determined that the fire department had all the capabilities necessary to conduct the TASER training. He also testified that he chose to use alligator clips on plaintiff. Holmes testified that he placed the alligator clips on the back of plaintiff's shoulder and just below the waistline. He further testified that as the TASER instructor for the Village, he has discretion to deviate from TASER guidelines when reasonable. He routinely made discretionary decisions within the TASER guidelines, such as how many exposures to give, how the exposures would be given (alligator clips or probes), where on the body to place those exposures, and whether the exposures would be given while the trainee was standing or kneeling. After Holmes' testimony, defendants then rested.

¶ 10    At the close of evidence, defendants filed another motion for directed verdict. This second motion was exactly the same as the first. The trial court heard arguments from both parties and ultimately held that: (1) the statute of limitations affirmative defense implicated a question of fact to be determined by the jury (specifically whether Andrew Holmes had notice of the lawsuit), (2) defendants, as a matter of law, were not entitled to discretionary immunity pursuant to 745 ILCS 10/2-201, (3) there was not sufficient evidence to warrant a jury instruction as to whether or not Chavez was a borrowed employee, and (4) there was sufficient evidence to warrant a jury instruction as to whether the absence of a mat was negligent. The jury returned a verdict for plaintiff, and the trial court subsequently entered judgment. No post-trial motion was filed but defendants filed a timely notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    As a preliminary matter, plaintiff filed a motion to dismiss the appeal, arguing that by not filing a post-trial motion as required by 735 ILCS 5/2-1202, defendants failed to properly perfect their appeal and did not preserve any issue for review. We entered an order stating that the motion to dismiss would be taken with the case. We now deny the motion.

¶ 13    Plaintiff argues that 735 ILCS 5/2-1202 required defendants to file a post-trial motion in order to properly perfect their appeal. Because no post-trial motion was filed, plaintiff claims that defendants did not preserve any issue for review. Defendants respond that under *Crim by Crim v. Dietrich*, 2020 IL 124318, no post-trial motion was necessary as the jury was never presented with the issue of discretionary immunity. We agree with defendants.

¶ 14    735 ILCS 5/2-1202 governs the necessity of post-trial motions in jury cases. It reads, in relevant portion, as follows:

"Reserved ruling on motion for directed verdict--Post-trial motions in jury cases.

(a) If at the close of the evidence, and before the case is submitted to the jury, any party moves for a directed verdict the court may (1) grant the motion or (2) deny the motion or reserve its ruling thereon and submit the case to the jury. If the court denies the motion or reserves its ruling thereon, the motion is waived unless the request is renewed in the post-trial motion.

(b) Relief desired after trial in jury cases, heretofore sought by reserved motions for directed verdict or motions for judgment notwithstanding the verdict, in arrest of judgment or for new trial, must be sought in a single post-trial motion. Relief after trial may include the entry of judgment if under the evidence in the case it would have been the duty of the court to direct a verdict without submitting the case to the jury, even though no motion for directed verdict was made or if made was denied or ruling thereon reserved. The post-trial motion must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief. Relief sought in post-trial motions may be in the alternative or may be conditioned upon the denial of other relief asked in preference thereto, as for example, a new trial may be requested in the event a request for judgment is denied.

(e) Any party who fails to seek a new trial in his or her post-trial motion, either conditionally or unconditionally, as herein provided, waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict.***" 735 ILCS 5/2-1202 (b), (e) (West 2022).

¶ 15    There are two exceptions in which a post-trial motion is not needed to preserve an appeal following a jury trial. Under the plain language of section 2-1202(e), a post-trial motion is not needed where the jury has failed to reach a verdict. A second narrow exception has been carved out where the trial court has directed a verdict on all issues. See *Crim by Crim v. Dietrich*, 2020 IL 124318, ¶ 26. This exception has been examined by our supreme court in *Crim by Crim v. Dietrich*, 2020 IL 124318.

¶ 16    In *Crim*, the trial court directed a verdict for defendants on the issue of informed consent. *Id.* ¶ 7. The trial continued and at the close of evidence, the jury found for defendants on the issue of professional negligence. *Id.* Plaintiff did not file a post-trial motion. *Id.* ¶ 8. Plaintiff appealed, challenging only the directed verdict on the issue of informed consent. *Id.* ¶ 9. The appellate court reversed and remanded for proceedings "as required by order of this court." *Id.* ¶ 11. On remand, the parties disagreed as to whether the issue of professional negligence could be retried. *Id.* ¶ 12. The parties proposed a certified question pursuant to Rule 308, asking the appellate court whether its prior ruling required a new trial *de novo* on all claims. *Id.* ¶ 14. The appellate court answered the question in the affirmative and defendant filed a notice of appeal to the supreme court, which was granted. *Id.* ¶ 15.  The supreme court reversed, finding that the only issue that could be retried was the issue of informed consent, as that issue was never before the jury, so no post-trial motion was required to preserve the issue for appeal. *Id.* ¶¶ 33, 43.

¶ 17    In his motion to dismiss, plaintiff argues that under *Crim*, a litigant must file a post-trial motion to preserve an appeal following a jury trial in all circumstances. However, this interpretation ignores the underlying logic of the opinion. In *Crim*, our supreme court ultimately determined that the question of whether a post-trial motion is necessary to preserve alleged error "turns on the question of whether the jury rendered a decision on an issue being challenged before

a reviewing court." *Crim*, 2020 IL 124318, ¶ 33. Applying this rationale here, we determine that a post-trial motion was unnecessary. The only issue on appeal is whether the trial court erred in directing a verdict on the issue of discretionary immunity. This issue was never before the jury. Accordingly, the jury never rendered a decision on this issue, and no post-trial motion was required.

¶ 18    Plaintiff additionally argues that "[d]efendant cannot apply for a *new trial* now after ignoring compliance with 5/2-1202." (Emphasis added). However, plaintiff again misses the mark. Defendants here are not attempting to apply for a new trial. Rather, they are asking for review of the trial court's ruling on the motion for directed verdict on the issue of discretionary immunity. Reversing this ruling would not necessitate a new trial; it would instead negate the necessity of a trial in the first place, as defendants would be immune from any liability. We therefore determine that this argument is misplaced and agree with defendants that no post-trial motion was required.

¶ 19    As no post-trial motion was required, defendants did properly preserve their appeal and therefore, we turn to the merits. At issue in this appeal is whether the trial court correctly entered judgment in favor of plaintiff and against defendants on the defendants' affirmative defense of discretionary immunity. The trial court's grant or denial of a motion for directed verdict is reviewed *de novo*. *Barr v. Cunningham*, 2017 IL 120751, ¶ 15. The application of immunity provisions of the Local Governmental and Governmental Employees Tort Immunity Act ("Act") is also reviewed *de novo*. *Ponto v. Levan*, 2012 IL App (2d) 110355, ¶ 61.

¶ 20    Sections 2-109 and 2-201 of the Act, read together, immunize public entities for the discretionary policymaking decisions of their employees. See *Monson v. City of Danville*, 2018 IL 122486, ¶ 16 (citing *Smith v. Waukegan Park Dist.*, 231 Ill. 2d 111, 118 (2008)). These sections provide:

"A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109 (West 2022).

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2022).

This immunity covers both negligent and willful and wanton conduct. *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 59 (citing *Monson*, 2018 IL 122486, ¶ 29). The public official asserting the defense bears the burden of proving it is entitled to the immunity. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003).

¶ 21    In order for 2-201 immunity to attach, two requirements must be met. First, a defendant must prove that the employee held either a position involving the determination of policy or the exercise of discretion. 745 ILCS 10/2-201 (West 2022). Second, the act or omission giving rise to the injury must result from both a determination of policy and an exercise of discretion. *Id.*; *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998).

¶ 22    A policy decision, for purposes of section 2-201 immunity, requires a public official to balance competing interests and make a determination as to what course of action best serves those interests. *Id.*, 342-343. Such interests may include safety, convenience, and cost. *Andrews v. Metropolitan Water Reclamation District of Greater Chicago*, 2019 IL 124283, ¶ 28 (citing *West v. Kirkham*, 147 Ill. 2d 1, 11 (1992)). Exercising discretion involves engaging in an act that is unique to a particular public office. *Snyder v. Curran Township*, 167 Ill. 2d 466, 474 (1995). "Discretionary acts involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act or how and in what manner that act should be performed." *Richter v.*

*College of Du Page*, 2013 IL App (2d) 130095, ¶ 43. It is well established that while public officials enjoy immunity for their discretionary acts, they do not enjoy immunity for their ministerial acts. See *Van Meter*, 207 Ill. 2d at 371; *Snyder*, 167 Ill. 2d at 474; *Richter*, 2013 IL App (2d) 130095, ¶ 36. "The distinction between discretionary and ministerial functions resists precise formulation, and *** the determination whether acts are discretionary or ministerial must be made on a case-by-case basis." *Snyder*, 167 Ill. 2d at 474. However, ministerial acts are generally defined as acts performed on a given set of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act. *Van Meter*, 207 Ill. 2d at 562 (citing *Snyder,* 167 Ill. 2d at 474).

¶ 23     We turn to the first requirement — whether Holmes' position with the Village determined policy or exercised discretion. We find that his position as the Village's only TASER training instructor involved the exercise of discretion, as Holmes had to exercise personal deliberation and judgment in organizing, implementing, and running the TASER training class. During trial, both Holmes and Chief Lindstrom testified that Holmes was the only TASER training instructor with the Kirkland Police Department. Holmes further testified that as the only TASER training instructor with the Kirkland Police Department, he was responsible for organizing and implementing the TASER training program. Chief Lindstrom also testified that he deferred to Holmes in how the TASER training class was going to be run as Holmes was in charge of the class. As part of Holmes' responsibility in organizing, implementing, and running the TASER training class, Holmes had to exercise personal deliberation in determining an appropriate location to conduct the TASER training, how many exposures to give, how the exposures would be given (alligator clips or probes), where on the body to place those exposures, and whether the exposures would be given while standing or kneeling. These are all discretionary decisions made by Holmes

in his capacity as the Village's only TASER training instructor. No one else could have made those decisions because the minutia of the TASER training class itself was solely the responsibility of Holmes; the decisions were unique to his position as the Village's only TASER training instructor.

¶ 24    The trial court, in determining that Holmes was not engaged in discretion in conducting the TASER training, relied heavily on the TASER guidelines. This reliance is misplaced, as the TASER guidelines do not have the mandate of legal authority necessary to render Holmes' acts as ministerial as opposed to discretionary. In *Snyder*, a municipal defendant was found to be engaged in a ministerial act when it placed a warning sign on the right side of the road, in direct opposition to the requirements laid out in the Manual on Uniform Traffic Control Devices. *Snyder*, 167 Ill. 2d at 474. The supreme court found that because the Manual had been adopted by reference into the Illinois Vehicle Code, it had the mandate of legal authority. *Id.* Here, unlike in *Snyder*, the TASER guidelines have not been adopted by any statute or regulation. These guidelines were created by TASER, for TASER - we cannot find that they have the mandate of legal authority. Additionally, Chief Lindstrom testified that he deferred solely to Holmes in how the TASER training class was going to be run. In other words, Holmes alone made the final determination on how to handle the TASER training; he had unfettered discretion. See *Richter*, 2013 IL App (2d) 130095, ¶ 44. Therefore, Holmes' decisions relying on the guidelines were discretionary as opposed to ministerial and we find that his position as the Village's only TASER training instructor involved the exercise of discretion.

¶ 25    Having determined that Holmes' position involved the exercise of discretion, we turn now to the second requirement — that the act giving rise to plaintiff's injuries was *both* a determination of policy and an exercise of discretion. Plaintiff, in his complaint, alleges three acts that gave rise to his injury: the conducting of the TASER training generally, the supervision or monitoring of

plaintiff after he had been tased, and the failure to place mats around plaintiff while he was being tased. We find that each of these three acts are both a policy determination and an exercise of discretion.

¶ 26    First, we look to Holmes' conducting of the TASER training generally. As previously discussed, Holmes made many discretionary decisions in his capacity as the Village's only TASER training instructor. These decisions also constituted policy determinations, as he had to weigh various interests and determine what course of action best served those interests. For example, in determining a location for the TASER training, Holmes weighed competing interests (e.g., safety and convenience) and made a determination that the fire department would be the safest and most convenient place to hold the training due to the availability of both a classroom area and a carpeted area to conduct exposures. He also took into consideration the immediate availability of emergency medical technicians at the fire department, should anything go awry during the exposures. Additionally, Holmes made policy determinations when he chose where to place the alligator clips on plaintiff. He weighed various interests, such as safety of plaintiff, learning objectives of the training, and convenience. Because Holmes made policy determinations in conducting TASER training, he is entitled to discretionary immunity.

¶ 27    Plaintiff argues that Holmes' acts did not involve policy making, as Chief Lindstrom testified that Holmes did not determine police department policies or procedures. However, this is not dispositive. There is a very specific definition of policy making under 745 ILCS 10/2-201 (West 2022). We must apply that definition and make our determination based on that, rather than on the testimony of a chief of police who likely does not have in-depth knowledge of this area of law. In applying the aforementioned definition of policy making, we find that Holmes, as the

Village's only TASER training instructor, made policy determinations in organizing, implementing, and running the TASER training class.

¶ 28    Next, plaintiff asserts that Holmes failed to supervise or monitor plaintiff after he had been tased, giving rise to plaintiff's injury. The trial testimony and a review of the video evidence show that plaintiff received TASER exposure via alligator clip. These clips were placed by Holmes onto plaintiff. When plaintiff was tased, one of the spotters also received exposure and fell to the ground, unable to support plaintiff. Plaintiff argues that because the spotter was *inadvertently* exposed, defendants cannot be entitled to discretionary immunity. Discretionary immunity requires a conscious decision; a judgment call and weighing of risks and benefits. *Andrews,* 2019 IL 124283, ¶ 34. Although it is true that exposing the spotter was not a judgment call made by Holmes, he did use judgment, informed by his training, to make a conscious decision where to place the alligator clips on plaintiff. He may have been negligent in making that decision, but it was still a conscious decision where Holmes weighed various competing interests (such as safety and educational objectives) and reached a conclusion as to what placement best served those interests. Therefore, Holmes' supervision and monitoring of plaintiff after he had been tased constituted both an exercise of discretion and a policy determination.

¶ 29    Addressing plaintiff's final assertion: Holmes' failure to place mats around plaintiff while he was being tased was both a policy determination and an exercise of discretion. In choosing to not place mats, Holmes had to balance competing interests, such as safety, convenience, and cost. There were no mats available from either the police department or the fire department – to obtain them would be potentially inconvenient and potentially costly. In deciding not to place mats, Holmes weighed competing interests and made a judgment call. Therefore, his decision not to

place mats was a policy determination. It was also an exercise of discretion, as he personally deliberated and used his own personal judgment in making the decision not to use mats.

¶ 30     As a final note, the trial court found that because Holmes was not the village president, chief-of-police, or a fire marshal, that his acts could not constitute policy determinations. However, it is clear from both the plain language of section 2-201 and existing precedent that a public employee need not hold a position of power in order to make policy. The plain language of 2-201 reads "a public *employee* serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." (Emphasis added.) 745 ILCS 10/2-201 (West 2022). The statute does not limit the immunity to employees in a position of power; it encompasses all public employees. Under the well-settled principles of statutory interpretation, we may not read exceptions, conditions, or limitations into the statute. *Andrews*, 2019 IL 124283, ¶ 24. We decline to read any limitation into section 2-201 or restrict its application only to employees in "positions of power."

¶ 31     Moreover, existing precedent has not limited discretionary immunity to public employees in positions of power. In *Richter v. College of Du Page*, 2013 IL App (2d) 130095, we found that a building-and-grounds manager and his employee were determining policy in their handling of a sidewalk deviation. The fact that the building-and-grounds manager and his employee were not high-ranking officials within the college did not mean they were incapable of policymaking. Rather, the fact that they weighed competing interests and made a judgment call as to the handling of each sidewalk deviation indicated that they were engaged in policymaking. *Id.* ¶ 41. Similarly here, it is not conclusive that Holmes was a part-time police officer as opposed to someone with

more power; he was still engaged in policy-making as the Village's only TASER training instructor.

¶ 32    Discretionary immunity is "premised upon the idea that public officials should be allowed to exercise their judgment in rendering decisions without fear that a good-faith mistake might subject them to liability." *Harrison v. Hardin Community Unit School District No. 1*, 197 Ill. 2d 466, 472 (2001) (citing *White v. Village of Homewood*, 285 Ill. App. 3d 496, 502 (1st Dist. 1996). Holmes is the exact sort of public official the legislature had in mind when it enacted section 2-201. He exercised his judgment in organizing, implementing, and running the TASER training class and is therefore immune from plaintiff's negligence suit.

¶ 33    As the evidence at trial established the required elements for section 2-201 immunity, defendants were entitled to discretionary immunity as a matter of law. We therefore reverse the trial court's judgment entering the jury's verdict for plaintiff and reverse the trial court's judgment on the motion for directed verdict on the issue of discretionary immunity.

¶ 34                                III. CONCLUSION

¶ 35    For the reasons stated we (1) reverse the trial court's judgment entering the jury's verdict for plaintiff and (2) reverse the trial court's judgment on the motion for directed verdict on the issue of discretionary immunity. Accordingly, on the issue of discretionary immunity, judgment is entered for defendants.

¶ 36    Reversed.