# Illinois Official Reports

## Supreme Court

---

### *Crim v. Dietrich*, 2020 IL 124318

---

| | |
|---|---|
| Caption in Supreme Court: | COLLIN CRIM, a Minor, by His Parents and Next Friends, Kristopher Crim and Teri Crim, Appellees, v. GINA DIETRICH, Appellant. |
| Docket No. | 124318 |
| Filed | April 2, 2020 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Adams County, the Hon. Mark Drummond, Judge, presiding. |
| Judgment | Certified question answered.<br>Reversed and remanded. |
| Counsel on Appeal | Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, and Adrian E. Harless and Tyler J. Robinson, of Heyl, Royster, Voelker & Allen, of Springfield, for appellant.<br><br>David A. Axelrod and Matthew R. Axelrod, of David A. Axelrod & Associates, P.C., of Chicago, and Jonathan T. Nessler, of Nessler & Associates, Ltd., of Springfield, for appellees.<br><br>Richard M. Burgland and Donald P. Eckler, of Pretzel & Stouffer Chtrd., of Chicago, for *amicus curiae* Illinois Association of Defense Trial Counsel. |

Lawrence R. Kream, of Law Office of Lawrence R. Kream, LLC, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Justices       JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Justices Garman, Theis, and Neville concurred in the judgment and opinion.

Chief Justice Anne M. Burke specially concurred, with opinion.

Justice Kilbride dissented, with opinion.

Justice Michael J. Burke took no part in the decision.

**OPINION**

¶ 1      In this appeal, the circuit court of Adams County certified the following question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (Ill. S. Ct. R. 308 (eff. July 1, 2017)): "Whether the ruling of the appellate court, 2016 IL App (4th) 150843, reversing the judgment and remanding this case for a new trial requires a trial *de novo* on all claims." The appellate court answered this question in the affirmative. 2018 IL App (4th) 170864-U. We granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2018). We also granted motions by the Illinois Association of Defense Trial Counsel to file an *amicus curiae* brief in support of defendant and the Illinois Trial Lawyers Association (ITLA) to file an *amicus curiae* brief in support of plaintiffs. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010). For the reasons that follow, we reverse the judgments of the appellate court and circuit court and remand the matter to the circuit court for further proceedings consistent with this opinion.

¶ 2                           BACKGROUND

¶ 3      Because our resolution of this appeal concerns a narrow certified question, we summarize here only those facts pertinent to our disposition. The underlying litigation is more fully set forth in the appellate court's initial opinion, *Crim v. Dietrich*, 2016 IL App (4th) 150843 (*Crim I*).

¶ 4      In August 2015, plaintiffs, Kristopher Crim and Teri Crim, acting on behalf of their biological son, Collin Crim (born June 17, 2005), filed a fourth amended medical malpractice claim against defendant, Gina Dietrich, D.O., alleging two claims: (1) Defendant failed to obtain Teri's informed consent to perform a natural birth despite possible risks associated with Collin's large size, and (2) defendant negligently delivered Collin, causing him injuries. The allegations supporting the informed consent claim are found in subparagraphs (a) thru (j) of plaintiffs' fourth amended complaint, while subparagraphs (k) and (*l*) concern the allegations related to professional negligence during the delivery of the child.

¶ 5      As to the informed consent claim, plaintiffs alleged, among other things, that prior to birth, defendant failed to diagnose Collin with fetal macrosomia because she failed to recognize the

significance of Teri's fundal heights, failed to assess the fetal weight, and failed to order an ultrasound prior to inducing labor. As a result, plaintiffs claim that defendant failed to inform Teri of the risks and benefits of vaginal birth as opposed to Caesarean section, failed to inform her of the high risk of shoulder dystocia and brachial plexus injury in the event of a vaginal birth, and failed to offer Teri the option of delivering Collin by Caesarean section, given Collin's large size.

¶ 6        The negligence claim, under subparagraphs (k)-(*l*), alleged negligent professional conduct during the birth of Collin. During Collin's June 17, 2005, natural delivery, Collin suffered shoulder dystocia, which is an obstructed labor whereby, after the delivery of the head, one or both shoulders of an infant cannot pass or requires significant manipulation. As a result, Collin suffered a broken clavicle and extensive nerve damage in his right shoulder, arm, and hand.

¶ 7        In September 2015, the matter proceeded to a jury trial. Following the presentation of the plaintiffs' case, defendant moved for a partial directed verdict on the issue of informed consent, arguing that the appellate court's decision in *St. Gemme v. Tomlin*, 118 Ill. App. 3d 766 (4th Dist.1983), requires plaintiffs to present expert testimony that a reasonable patient would have pursued a different form of treatment. Defendant argued that plaintiffs failed to proffer an expert to satisfy *St. Gemme*'s holding. The circuit court agreed, granting defendant's motion for a directed verdict on the issue of informed consent. Thereafter, following additional evidence and argument, the jury returned a verdict in defendant's favor and against plaintiffs on their remaining claim of professional negligence.

¶ 8        After the circuit court entered the judgment on the jury's verdict, the plaintiffs did not file any post-trial motions. Instead, on October 15, 2015, plaintiffs filed a timely notice of appeal.

¶ 9        Relevant to the appeal before this court, plaintiffs argued in *Crim I* that the circuit court erred by granting a directed verdict on the issue of informed consent. In the introductory paragraph of their opening brief, plaintiffs framed their appeal as a review only on whether the circuit court erred in issuing a directed verdict on the informed consent claim, expressly stating: "While this case was tried to verdict, this appeal is not based upon the verdict of a jury. This appeal reviews the trial court's order granting a partial directed verdict in favor of the Defendant on the Plaintiffs' theory of negligence based upon the doctrine of informed consent."

¶ 10       Plaintiffs asserted that expert testimony was not required to show what a reasonable patient would have done. Instead, plaintiffs contended that they sufficiently presented a claim on informed consent by offering Teri's testimony that she would have had a Caesarean section, had she known about Collin's size and the risks associated with the natural birth of a macrosomic baby. Consistent with their introductory paragraph, plaintiffs presented no argument in either their opening brief or reply brief addressing the jury's verdict regarding professional negligence. Rather, plaintiffs asked the appellate court to "reverse each and every decision and order entered in the trial court which were further steps in the procedural progression of enforcing or otherwise remaining consistent with the Court's Order granting the Defendant's Motion for Directed Verdict."

¶ 11       On November 7, 2016, the appellate court issued its opinion in *Crim I*, reversing the circuit's court's judgment and remanding the case to the circuit court. 2016 IL App (4th) 150843, ¶ 51. The appellate court limited its decision to an analysis of the partial directed verdict on the issue of informed consent, stating it need not address the subsequent proceedings

following the directed verdict "because it is not pertinent to the resolution of this case." *Id.* ¶ 29. The appellate court's mandate stated, "the order on appeal from the circuit court be REVERSED and the cause be remanded to the Circuit Court for the Eighth Judicial Circuit Adams County, for such other proceedings as required by order of this court."

¶ 12    Upon remand, the parties disagreed on what issues and facts could be retried. Defendant filed a motion *in limine* to exclude the presentation of any evidence relating to plaintiffs' negligent delivery claim, thereby requesting the new trial be conducted solely on the issue of informed consent. Defendant argued that the appellate court's opinion addressed only the informed consent claim and, therefore, the only issue and facts that should be retried are those related to plaintiffs' informed consent claim. Defendant further noted that plaintiffs forfeited their right to have a new trial on their professional negligence claim because they failed to file a post-trial motion as required by section 2-1202 of the Code of Civil Procedure. 735 ILCS 5/2-1202 (West 2016).[1] Therefore, according to defendant, the circuit court was barred from relitigating the jury's verdict.

¶ 13    In response, plaintiffs claimed that a new trial on all issues was necessary because the appellate court issued a general mandate and the appellate court reversed the circuit court's judgment in its entirety and did not limit the issues the new trial could address. In regard to defendant's claim of forfeiture, plaintiffs asserted they preserved all issues for review by including in their notice of appeal and appellate brief a general request for a new trial. Plaintiffs additionally argued for the first time that they were not required to file a post-trial motion challenging a directed verdict, given the directed verdict changed the "tenor" of the remaining trial, thus making a new trial on all issues appropriate.

¶ 14    Following a hearing on defendant's motion *in limine*, the circuit court denied the motion but invited the parties to propose a certified question pursuant to Rule 308. The circuit court certified the following question for immediate appeal: "Whether the ruling of the Appellate Court, 2016 IL App (4th) 150843, reversing the judgment and remanding this case for a new trial requires a trial *de novo* on all claims."

¶ 15    The appellate court granted defendant's application for an interlocutory appeal and answered the certified question in the affirmative. 2018 IL App (4th) 170864-U, ¶ 54 (*Crim II*). Defendant filed her notice of appeal to this court, which we granted.

¶ 16                                                          ANALYSIS

¶ 17    Based on the language of the certified question at issue, plaintiffs initially argue that defendant's appeal to this court is an impermissible attempt at relitigating the merits of *Crim I* by requesting this court to go beyond the specific question and determine whether a new trial *de novo* is proper. Plaintiffs argue that our review of the certified question should be limited to only the question certified by the circuit court, which, according to plaintiffs, asks the appellate

---

[1]Section 2-1202(e) uses the term "waiver" to describe the relinquishment of the right to apply for a new trial when the party fails to file a posttrial motion. 735 ILCS 5/2-1202 (West 2016). For purposes of this opinion, we use the term "forfeiture" instead of "waiver" because, by failing to file a posttrial motion in contravention of section 2-1202(e), plaintiffs failed to timely comply with procedural requirements, which we consider to be a forfeiture of a claim. See *People v. Hughes*, 2015 IL 117242, ¶ 37 ("While waiver is the voluntary relinquishment of a known right, forfeiture is the failure to timely comply with procedural requirements.").

court to provide "guidance as to the meaning of its ruling in *Crim I*." In other words, plaintiffs consider the certified question to be a request for the appellate court to interpret its prior decision in order to clarify for the parties what *Crim I* "intended" or "meant" when it remanded the case. Based on their reading of the certified question, plaintiffs claim that this court has "no legal basis" to substitute its judgment for that of the appellate court.

¶ 18    Plaintiffs acknowledge, however, that the scope of our review is broad and not limited to determining how the circuit court's question should be decided. This is so because, when this court accepts an appeal involving a question of law identified under Rule 308, "the scope of our review is not limited to determining whether the appellate court answered the certified questions correctly." *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994). Moreover, under Rule 366, this court may "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." Ill. S. Ct. R. 366 (eff. Feb. 1, 1994).

¶ 19    Bearing these principles in mind, we initially consider the question that the circuit court certified to the appellate court. A certified question under Rule 308 permits the discretionary appeal of an otherwise unappealable interlocutory order of the circuit court where the court "finds that the order involves a question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Ill. S. Ct. R. 308(a) (eff. July 1, 2017). Our review of a certified question under Rule 308 is *de novo*. *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21.

¶ 20    The certified question asks whether the ruling of *Crim I* "requires a trial *de novo* on all claims" as a result of the appellate court reversing and remanding the matter "for such other proceedings as required by the order of [the] court." The language of the certified question is purely legal in nature, as it presents a question that can only be answered by applying relevant legal principles and interpretation of the law to the legal effect of *Crim I*'s holding. See Black's Law Dictionary 1366 (9th ed. 2009) (defining the term "question of law" as an issue "concerning the application or interpretation of the law" that the court must decide).

¶ 21    Unlike in cases involving improper certified questions, our answer to the certified question neither depends on the resolution of a host of factual predicates, nor does answering the certified question depend on an application of the law to the facts of a specific case, nor does addressing the certified question result in an answer that is advisory or provisional. See *Rozsavolgyi*, 2017 IL 121048, ¶ 21 (citing various cases). In fact, there is no dispute regarding the underlying facts of the case. Additionally, the certified question does not make an improper request for a new interpretation as to the *meaning* or *intent* of *Crim I*. If that were the situation, the certified question would indeed be improper given that, once *Crim I* issued its mandate, the appellate court was divested of jurisdiction to take any further action in that appeal. See *PSL Realty Co. v. Granite Investment Co.*, 86 Ill. 2d 291, 304 (1981) ("The mandate of a court of review is the transmittal of the judgment of that court to the circuit court, and revests the circuit court with jurisdiction."). It would be absurd to permit a certified question to revest the appellate court with jurisdiction to reexamine the merits of a case previously decided. Rather, the certified question seeks a legal analysis regarding whether *Crim I*'s holding "*requires* a new trial *de novo*." (Emphasis added.) The certified question is no different than a certified question involving statutory construction (see, *e.g.*, *Rosenbach v. Six Flags Entertainment*

*Corp.*, 2019 IL 123186, ¶ 14; *Rozsavolgyi*, 2017 IL 121048, ¶ 6; *Bowman v. Ottney*, 2015 IL 119000, ¶ 8) and requests no more of this court, or the appellate court below, than what reviewing courts are regularly tasked to perform: resolve legal questions regarding the effects a prior decision has on a pending case. See, *e.g.*, *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2016 IL 119861, ¶ 6 (answering a certified question concerning the legal effects a recent United States Supreme Court decision has on Illinois law and the pending case). It is without doubt that answering the certified question will establish the necessary parameters of the new trial and, therefore, materially advance the termination of the litigation, resulting in a reduction of protracted litigation and unnecessary legal fees if the question goes unanswered. Accordingly, we conclude that the certified question is a question of law properly certified under Rule 308, and we will proceed to answer it.

¶ 22        Reviewing the ruling in *Crim I*, the appellate court in *Crim II* determined that, because *Crim I* issued a general remand without specific instructions, a new trial should be held on all issues, including the issue of professional negligence. *Crim II*, 2018 IL App (4th) 170864-U, ¶ 43. The *Crim II* court found that the "decisive" wording of *Crim I*'s opinion and mandate implied that the entire judgment was abrogated and the circuit court was to proceed *de novo*. *Id.* The appellate court explained:

> "Our mandate [in *Crim I*] reversed the trial court's judgment, and our opinion ordered a new trial based on the first issue we considered: the directed verdict on informed consent. We did not limit the issue in the new trial, and we did not address relevant issues presented to us on appeal. Based on our review of the mandate and prior opinion, we conclude that a new trial on all issues was required." *Id.* ¶ 52.

For these reasons, the appellate court answered the certified question in the affirmative. *Id.* ¶ 44.

¶ 23        In her appeal before this court, defendant takes issue with *Crim II*'s answer to the certified question. According to defendant, *Crim II*'s answer ignores the general rule that the failure to file a post-trial motion following a jury trial prevents review of the jury's verdict, and no new trial could be conducted as to the issue that went to a jury. Defendant notes that plaintiffs abandoned their statutory right to challenge the jury's verdict by failing to file a post-trial motion pursuant to section 2-1202(e), which requires a party to raise issues in a post-trial motion before raising those issues on appeal when requesting a new trial. As a result, defendant argues that the holding in *Crim I*, which reversed and remanded "for such other proceedings as required" by the appellate court, could not have encompassed the jury's verdict because the only issue before the appellate court was the partial directed verdict on plaintiffs' informed consent claim. Therefore, defendant contends that *Crim I* could not have revived the professional negligence claim after the 30-day deadline for filing post-trial motions passed. As such, defendant requests that this court consider whether the appellate court in *Crim II* erred in determining that *Crim I* required a new trial *de novo* on all claims.

¶ 24        We find merit in defendant's argument that the ruling in *Crim I* could not require a new trial *de novo* on all claims due to plaintiffs' failure to challenge the jury's verdict pursuant to the requirements of section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202 (West 2016)).

¶ 25        Section 2-1202 governs "[p]ost-trial motions in jury cases" and sets out strict rules for filing such motions in jury trials, stating that "[r]elief desired after trial in jury cases, *** *must*

be brought in a single post-trial motion." (Emphasis added.) 735 ILCS 5/2-1202(b) (West 2016). Section 2-1202 further requires that post-trial motions in jury cases be filed within 30 days after the entry of judgment, and the motion "must contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief." 735 ILCS 5/2-1202(c), (b) (West 2016). Section 2-1202(e) specifies what happens if a party in a jury case fails to file a post-trial motion:

"(e) Any party who fails to seek a new trial in his or her post-trial motion, either conditionally or unconditionally, as herein provided, waives the right to apply for a new trial, except in cases in which the jury has failed to reach a verdict." 735 ILCS 5/2-1202(e) (West 2016).

¶ 26    There are two exceptions where a litigant need not file a post-trial motion to preserve his or her appeal following a jury trial. First, under section 2-1202(e), forfeiture does not occur where the jury has failed to reach a verdict. In this case, the jury reached a verdict, so this statutory exception does not apply. Second, interpreting this statutory exception, appellate courts have also carved out a "narrow exception" for directed verdicts, so that it is also not necessary for a party to file a post-trial motion after the circuit court directs a verdict on all issues. See, *e.g.*, *Arient v. Shaik*, 2015 IL App (1st) 133969, ¶ 29; *Garcia v. Seneca Nursing Home*, 2011 IL App (1st) 103085, ¶ 21 (it is not "necessary to file a posttrial motion following entry of a directed verdict in a jury case to preserve issues for appeal" (citing *Keen v. Davis*, 38 Ill. 2d 280, 281-82 (1967))).

¶ 27    The second exception to section 2-1202(e) originated in *Keen*, 38 Ill. 2d at 281, where this court resolved a dispute among the appellate districts regarding whether it is necessary to file a post-trial motion and preserve issues for appeal following an entry of a directed verdict in a jury case. The *Keen* court held that a post-trial motion need not be filed following a directed verdict as a prerequisite to appeal. *Id.* at 282. The *Keen* court reasoned:

" 'When a judge directs a verdict at any stage of the trial, in effect, he has removed the case from the realm of the rules relating to jury cases and the rules applicable to bench trials should apply. It seems illogical to require a party to address the same arguments to the same judge on the identical questions before proceeding to review by an appellate tribunal.' " *Id.* at 281-82 (quoting *Larson v. Harris*, 77 Ill. App. 2d 430, 434 (1966)).

¶ 28    Citing *Keen*'s exception, plaintiffs argue that, since the circuit court entered a directed verdict on their informed consent claim, "they were under no obligation to file a futile and ultimately meaningless post-trial motion" as to the jury's verdict on their remaining claim. Therefore, plaintiffs contend that the circuit court did not err in denying defendant's motion *in limine* based on *Crim II*'s holding.

¶ 29    Plaintiffs misinterpret this court's holding in *Keen*. In *Keen*, the circuit court entered a directed verdict that resolved the *entire* case. A jury's verdict was not at issue. For this reason, we found that it was illogical for the circuit court to consider the same arguments it had heard prior to issuing its directed verdict. As stated above, when the circuit court removed the entire case from the jury, the rules governing jury cases ceased to control. *Id.* Here, unlike in *Keen*, after the circuit court entered a partial directed verdict, the trial on the remaining issue regarding professional negligence continued, resulting in a jury's verdict in favor of defendant. Thus, at no time did the circuit court remove the entire case from the jury and enter judgment

on its own. Instead, the rules relating to jury cases continued to control after the circuit court's partial directed verdict.

¶ 30    Post-*Keen* decisions from this court in *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 224 (1978), and in *Mohn v. Posegate*, 184 Ill. 2d 540 (1998), provide further support for our interpretation of section 2-1202 that, when a case proceeds to a jury's verdict, a litigant must file a post-trial motion pursuant to section 2-1202 in order to challenge the jury's verdict on appeal.

¶ 31    In *Robbins*, this court dealt with a circuit court order that set aside in part a general verdict and granted the plaintiff a new trial on the question of damages. *Robbins*, 72 Ill. 2d at 219. In that case, the jury returned a verdict for the plaintiff in the amount of $25,000. *Id.* The defendants filed a post-trial motion requesting judgment notwithstanding the verdict but did not alternatively request a new trial if their motion for judgment notwithstanding the verdict were denied. *Id.* The plaintiff filed a motion for a new trial on damages only or, alternatively, for a new trial on all issues. *Id.* The circuit court granted the plaintiff's motion for a new trial on damages only and denied the defendants' motion. *Id.* In the second trial for damages, the jury awarded plaintiff $120,000. *Id.* at 220. The circuit court entered judgment on the verdict. *Id.* The defendants then filed a post-trial motion requesting a new trial on all issues, including liability. *Id.* On appeal, the *Robbins* court found that *Keen* was inapposite in this situation, reasoning that,

> "[w]here the jury already has reached a general verdict in favor of plaintiff, setting aside that verdict in favor of a new trial on the question of damages does not remove the question of liability from the province of the jury, because the first jury's verdict on that question remains intact." *Id.* at 224.

As such, this court held that *Keen*'s "narrow exception" to the post-trial motion rule was not available to the defendants who forfeited their right to request a new trial on the question of liability following the jury's verdict by failing to follow the statutory requirement of filing a post-trial motion. *Id.* at 223-25.

¶ 32    In *Mohn*, this court held that filing a post-trial motion following summary judgment is unnecessary to preserve an issue for appeal. *Mohn*, 184 Ill. 2d at 544. Comparing summary judgment to a directed verdict, this court stated:

> "In the same way that the jury does not determine the verdict when it is directed, the jury makes no factual determination concerning the issue or issues disposed of by entry of summary judgment before trial of the case upon the remaining undetermined issues. Thus, we conclude that, as in a nonjury case in which a post-judgment motion need not be filed, a party need not raise in a post-trial motion any issue concerning the pretrial entry of summary judgment as to part of a cause of action in order to preserve the issue for review." *Id.* at 546-47.

¶ 33    As *Mohn* demonstrates, the difference between the situations exemplified by *Keen* and *Robbins*, concerning whether a post-trial motion is required to preserve alleged error, turns on the question of whether the jury rendered a decision on an issue being challenged before a reviewing court. That is precisely the situation here, where plaintiffs request that the new trial should be conducted on an issue decided by a jury. Because the jury made a factual determination on the issue of professional negligence and the circuit court entered judgment based on that determination, plaintiffs' reliance on cases that follow *Keen* and its progeny in

support of their argument that no post-trial motion is required is misplaced. Therefore, without filing a post-trial motion as required by section 2-1202, plaintiffs forfeited their right to request a new trial on the issue of professional negligence.

¶ 34    There are sound policy reasons behind the requirement that a litigant file a post-trial motion following a jury case. First, and foremost, this court has long favored the correction of errors at the circuit court level. *People v. Marker*, 233 Ill. 2d 158, 171-72 (2009) (citing *People v. Heil*, 71 Ill. 2d 458, 461 (1978)). The statutory requirement meets our general rule by allowing circuit court judges—those most familiar with the evidence and the witnesses—an opportunity to review their ruling and decide if a new trial or a judgment notwithstanding the verdict is appropriate. *Keen*, 38 Ill. 2d at 281. Filing a post-trial motion following a jury's verdict also allows a reviewing court to ascertain from the record whether the circuit court was afforded an adequate opportunity to reassess any allegedly erroneous rulings that affected the case, including the jury's verdict. *Id.* Further, requiring the litigants to specify the grounds in support of their contentions in a section 2-1202 motion prevents the litigant from stating mere general objections or, as in this case, subsequently raising on appeal arguments, which the circuit court judge was never given an opportunity to consider, *i.e.*, whether a partial directed verdict materially altered the tenor of the remaining trial. *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 349-50 (1980). Additionally, a post-trial motion eliminates uncertainty on appeal as to whether the jury's verdict is at dispute and allows an opposing party the opportunity to respond. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 14.

¶ 35    Based on all of the foregoing, we find that neither exception to section 2-1202 applies. The plain language of the statute and case law interpreting section 2-1202 require a litigant to file a post-trial motion in order to challenge the jury's verdict even when the circuit court enters a partial directed verdict as to other issues in the case. The failure by plaintiffs to file a post-trial motion challenging the jury's verdict deprived the circuit court of an opportunity to correct any trial errors involving the jury's verdict and undermined any notion of fairness to defendant on appeal. Moreover, as a result, plaintiffs failed to preserve any challenge to the jury's verdict for appellate review. Therefore, it is no surprise that the appellate court in *Crim I* never discussed forfeiture rules in its opinion. The procedural methods required for preserving questions for review were clearly not complied with by the failure to file a proper post-trial motion challenging the jury's verdict.

¶ 36    Plaintiffs attempt to circumvent section 2-1202's requirement by arguing that the directed verdict on their informed consent claim materially "altered the tenor" of the remaining case and affected the jury's verdict. Plaintiffs also argued in both their brief to this court and at oral argument that "they were under no obligation to file a futile and ultimately meaningless post-trial motion." Plaintiffs point to the circuit court's instruction to the jury to disregard all evidence pertaining to negligence prior to delivery, which, according to plaintiffs, tainted the remaining portion of their case because some of the evidence regarding the informed consent claim was relevant to the issue of professional negligence during the delivery of Collin. Plaintiffs further assert that they presented evidence that defendant was surprised by Collin's size and was unprepared for delivering a macrosomic infant and that her failure to recognize his size before delivery led to complications during delivery. In support of their argument, plaintiffs cite a single case, *Keiser-Long v. Owens*, 2015 IL App (4th) 140612, ¶ 26. However, *Keiser-Long* merely followed this court's decision in *Keen* and did not involve a situation

where the appellate court found that a partially directed verdict "tainted" the jury's verdict.[2] We find no other authority that supports plaintiffs' argument.

¶ 37    Even assuming the two claims were intertwined, the trouble with plaintiffs' argument is the simple fact they never filed a post-trial motion pursuant to section 2-1202. Plaintiffs are essentially arguing that the circuit court erred by allowing the jury trial to continue after it entered the partial directed verdict. However, the record is devoid of plaintiffs making any argument before the circuit court that the informed consent claim was closely intertwined with the professional negligence claim. It was not until the case was transmitted back to circuit court on remand did plaintiffs argue that the jury's verdict should be set aside.

¶ 38    Plaintiffs' arguments before this court highlight exactly the reason why it is incumbent upon a party to raise their concerns of trial error at the trial level and allow the circuit court the opportunity to address those errors in the first instance. Had the circuit court been aware of the possibility that the directed verdict may have altered the jury's deliberation to such an extent that the jury's verdict should be set aside, the circuit court would have been in the best position to address those concerns. Instead, plaintiffs chose not to exercise their right to challenge the jury's verdict pursuant to section 2-1202. As a result, plaintiffs deprived the circuit court of the opportunity to address and correct any perceived trial errors. Simply put, to the extent plaintiffs believed the evidence was intertwined and the directed verdict materially altered the remainder of the jury trial, plaintiffs had the obligation to make that argument before the circuit court in order to preserve any possible trial error for review.

¶ 39    Next, we reject plaintiffs' argument that their notice of appeal and initial appellate brief filed in *Crim I* preserved all issues of trial error for review. For the same reasons as stated above, plaintiffs' contention lies in direct conflict with the statutory requirements of section 2-1202. Despite citing the general principle that courts should liberally construe notices of appeal, plaintiffs provide no authority, and we find none, for the proposition that a notice of appeal or an appellate brief removes the statutory requirement of section 2-1202. If we were to adopt plaintiffs' argument, the statutory requirements in section 2-1202 would become meaningless—an outcome we are compelled to avoid. *Van Dyke v. White*, 2019 IL 121452, ¶ 46 ("No part of a statute should be rendered meaningless or superfluous."). Moreover, we find little support that plaintiffs raised any challenge to the jury's verdict in the initial appeal. In fact, as noted above, plaintiffs' introductory paragraph to their initial brief explicitly states that "this appeal is not based upon the verdict of a jury." Even if plaintiffs' notice of appeal and initial brief challenged the jury's verdict, which is not the situation, nowhere do plaintiffs make a clear and well-defined argument that the jury's verdict was contrary to the manifest weight of the evidence. *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003) ("[A] reviewing court may reverse a jury verdict only if it is against the manifest weight of the evidence."). Plaintiffs' reliance on any vague notion that they challenged the jury's verdict fails to comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018)). See, *e.g.*, *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of the rule.").

---

[2]We note that ITLA's *amicus* brief in support of plaintiffs urges this court to "ignore" *Keiser-Long*.

¶ 40 Lastly, plaintiffs argue that, because the appellate court in *Crim I* issued a general remand, they were automatically entitled to a new trial on all issues. For support, plaintiffs cite multiple cases for the proposition that, "[w]hen a court of review does not determine the merits of a case but merely reverses and remands without specific directions, the judgment of the court below is entirely abrogated and the cause stands as if no trial had occurred." *People ex rel. Borelli v. Sain*, 16 Ill. 2d 321, 326 (1959) (citing *Kinney v. Lindgren*, 373 Ill. 415 (1940)); see also *Rigdon v. More*, 242 Ill. 256 (1909); *Ziolkowski v. Continental Casualty Co.*, 365 Ill. 594, 600 (1937). These cases however have no relevance or applicability to the situation here. That is so because, when the appellate court in *Crim I* found that the circuit court erred in granting defendant's motion for a directed verdict on the issue of informed consent, the appellate court ruled on the merits of the case before it. Therefore, the appellate court's mandate could not remand the matter for a new trial on an issue never raised and not considered.

¶ 41 Accordingly, the appellate court in *Crim II* erred by answering the certified question in the affirmative. Further, based on our finding, we hold that the circuit court erred in denying defendant's motion *in limine*, which sought to limit the new trial to a trial on plaintiffs' informed consent claim.

¶ 42                                      CONCLUSION

¶ 43 For the foregoing reasons, we answer the certified question in the negative, and we reverse the judgment of the appellate court. We also reverse the circuit court's order denying defendant's motion *in limine* and remand the matter to the circuit court in order to conduct a new trial on the issue of informed consent.

¶ 44 Certified question answered.

¶ 45 Reversed and remanded.

¶ 46 CHIEF JUSTICE ANNE M. BURKE, specially concurring:

¶ 47 I agree with the majority that the judgment of the appellate court must be reversed. However, I reach that result for different reasons and, therefore, specially concur.

¶ 48 The plaintiff parents filed a medical malpractice action against the defendant doctor to recover for injuries relating to the birth of their child. At a jury trial, plaintiffs pursued two claims: (1) prior to delivery, defendant did not obtain the mother's informed consent to perform a natural birth when the baby's size presented risks associated with such a delivery and (2) during the delivery itself, defendant's actions were negligent and, as a result, the child was injured. At the close of plaintiffs' case-in-chief, on September 17, 2015, the trial court granted defendant's motion for a directed verdict on the informed consent claim but permitted the negligent delivery claim to go forward. At the close of trial, the jury returned a verdict in favor of defendant, and judgment was rendered on that verdict on September 23, 2015.

¶ 49 Plaintiffs filed a timely notice of appeal that referenced both the September 17 and September 23 orders. However, in the appellate court, plaintiffs expressly abandoned any objection to the September 23 order, stating in their opening brief that "this appeal is not based upon the verdict of the jury." Instead, plaintiffs explained that the "appeal reviews the trial court's order granting a partial directed verdict in favor of the Defendant on the Plaintiffs' theory of negligence based upon the doctrine of informed consent."

¶ 50    The appellate court agreed with plaintiffs that the trial court had "erred by granting a partial directed verdict" on the claim of lack of informed consent. *Crim v. Dietrich*, 2016 IL App (4th) 150843, ¶ 48 (*Crim I*). The appellate court did not, in any respect, address the claim of negligent delivery. At the conclusion of its opinion, the appellate court stated that the "trial court's judgment" was "[r]eversed" and the "cause remanded." *Id.* ¶¶ 51-52. The court's mandate stated that "the order on appeal from the circuit court be REVERSED and the cause be REMANDED to the Circuit Court for the Eighth Judicial Circuit Adams County, for such other proceedings as required by order of this court."

¶ 51    On remand in the trial court, defendant filed a motion *in limine* to bar the presentation of any evidence relating to plaintiffs' negligent delivery claim. Defendant maintained that, because the September 23, 2015, judgment had not been reversed by the appellate court, the remand proceedings should be limited solely to a new trial on the informed consent claim. Plaintiffs, in response, argued that the appellate court had, in fact, reversed the judgment order of September 23, 2015, and, therefore, they were entitled to a trial *de novo* on both claims. The trial court denied defendant's motion *in limine* but certified the following question under Illinois Supreme Court Rule 308 (eff. July 1, 2017): "Whether the ruling of the Appellate Court, 2016 IL App (4th) 150843, reversing the judgment and remanding this case for a new trial requires a trial *de novo* on all claims." The appellate court answered this question "yes." 2018 IL App (4th) 170864-U (*Crim II*). This appeal followed.

¶ 52    At first glance, it would seem there should have been no question as to how the trial court should have proceeded on remand following the appellate court's decision in *Crim I*. After all, the only claim that was addressed by the appellate court in *Crim I* was the informed consent claim. The court did not address the negligent delivery claim, let alone find any error in the verdict or judgment rendered in defendant's favor on that claim.

¶ 53    A question arose, however, because plaintiffs contended that, under a long-standing common-law rule, the appellate court's decision in *Crim I* had to be read as reversing the September 23, 2015, order. This rule, which appears in a number of decisions, states that, "[i]f a judgment in an ordinary suit at law in which the parties are entitled to a jury trial is reversed for errors intervening prior to the entry of the judgment and the cause is remanded generally, the parties are entitled to a trial *de novo*." *Roggenbuck v. Breuhaus*, 330 Ill. 294, 300 (1928); see also, *e.g.*, *Ziolkowski v. Continental Casualty Co.*, 365 Ill. 594, 599 (1937); *Rigdon v. More*, 242 Ill. 256, 259 (1909). Applying this rule, plaintiffs maintained that when the trial court granted the directed verdict on September 17, 2015, it committed a trial error that occurred "prior to the entry of the judgment" on September 23, 2015, and further, that the appellate court in *Crim I* had reversed the September 23 order on the basis of that error. Although plaintiffs acknowledged they could not find a "specific case with a directed verdict" that had applied the common-law rule in this way, they nevertheless maintained the rule should be applied in these circumstances. Plaintiffs also noted that the appellate court's reversal and remandment to the trial court was a general one, with no special limiting instructions. Accordingly, plaintiffs argued they were entitled to a trial *de novo* on both the informed consent and negligent delivery claims.

¶ 54    The legal issue presented by the certified question in this case is whether a mistaken partial directed verdict is an error "prior to the entry of judgment" within the meaning of cases such as *Roggenbuck*. This is how the appellate court in *Crim II* approached the certified question.

*Crim II* cited the rule relied upon by plaintiffs and, based on that rule, concluded the mandate in *Crim I* necessarily reversed the judgment entered by the trial court on September 23, 2015. See *Crim II*, 2018 IL App (4th) 170864-U, ¶¶ 38-44. I disagree.

¶ 55    Plaintiffs' position in this case rests on a misunderstanding of the nature of directed verdicts. A judgment " 'is a court's official decision with respect to the rights and obligations of the parties to a lawsuit.' " *People ex rel. Department of Public Aid v. Smith*, 212 Ill. 2d 389, 398 (2004) (quoting *In re Marriage of Logston*, 103 Ill. 2d 266, 277 (1984)); 735 ILCS 5/2-1301(a) (West 2018). When a trial court grants a motion for directed verdict on a claim, it removes the claim completely from the "province of the jury" (*Mohn v. Posegate*, 184 Ill. 2d 540, 546 (1998)) and determines the rights and obligations of the parties with respect to that claim. In other words, a directed verdict is a judgment rendered by the trial court as a matter of law. An erroneous directed verdict is not a trial error or "an error prior to the entry of judgment." Rather, a directed verdict is itself a judgment.[3]

¶ 56    When the trial court in this case granted defendant's motion for a directed verdict on the informed consent claim on September 17, 2015, it rendered a judgment on that claim as a matter of law. A second judgment was rendered on the jury's verdict on September 23, 2015. See 735 ILCS 5/2-1301(a) (West 2018) ("More than one judgment may be rendered in the same cause."). When the appellate court in *Crim I* stated that it was reversing the "judgment" of the trial court, it was necessarily referring to the directed verdict since the only matter the appellate court addressed was the informed consent claim. There is no basis for reading the appellate court's mandate as going beyond that. Accordingly, I would answer the certified question "no." For these reasons, I specially concur.

¶ 57    JUSTICE KILBRIDE, dissenting:

¶ 58    In my view, the majority errs in answering the certified question. I believe the petition for leave to appeal was improvidently granted and this is not a proper appeal under Illinois Supreme Court Rule 308 (eff. July 1, 2017). I also disagree with the majority's decision on the merits because it is inconsistent with this court's rules and case law and mistakenly allows the legislature to restrict the authority of reviewing courts to grant relief on forfeited claims. Accordingly, I respectfully dissent.

¶ 59    I. The Petition for Leave to Appeal Was Improvidently Granted

¶ 60    This court should dismiss this appeal as improvidently granted. Illinois Supreme Court Rule 315(a) (eff. Apr. 1, 2018) sets forth the following "character of reasons" that will be considered in deciding whether to allow a petition for leave to appeal:

---

[3]The Federal Rules of Civil Procedure make this point explicitly. Federal Rule of Civil Procedure 50(a) has replaced the "misleading" and "anachronis[tic]" term "directed verdict" with the term " 'judgment as a matter of law.' " Fed. R. Civ. P. 50(a) (Advisory Committee Notes—1991 Amendment). Notably, although Illinois retains the "directed verdict" terminology, our practice is modeled after the federal rules. See Ill. S. Ct. R. 240, Committee Comments; see also, generally, Renée Lettow Lerner, *The Rise of Directed Verdict: Jury Power in Civil Cases Before the Federal Rules of 1938*, 81 Geo. Wash. L. Rev. 448, 456 (2013).

"[T]he general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed."

¶ 61    Here, the judgment sought to be reviewed was interlocutory. The appellate court's unpublished order did not create any conflict with this court or with another division of the appellate court, nor did it address a question of general importance. The trial court certified the following question: "Whether the ruling of the appellate court, 2016 IL App (4th) 150843, reversing the judgment and remanding this case for a new trial requires a trial *de novo* on all claims." This is an entirely case-specific question. It is important to the parties in the case, but it is not of general importance. Finally, there is no need for the exercise of our supervisory authority. The certified question was directed to the very court that issued the mandate in question, and that court has provided an answer. This case is the quintessential example of the type of case this court will not review under Rule 315. Accordingly, I would dismiss the appeal as improvidently granted.

¶ 62                    II. This Is Not a Proper Rule 308 Appeal
¶ 63                           A. The Proper Analysis
¶ 64    If the court does not dismiss the appeal as improvidently granted, it should hold that this was an improper Rule 308 appeal, vacate the appellate court's order, and remand the case to the trial court. The trial court's certified question was not a proper use of Rule 308.

¶ 65    This court has been very clear about Rule 308's requirements for a proper certified question. Rule 308(a) provides, *inter alia*, that,

"[w]hen the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved." Ill. S. Ct. R. 308(a) (eff. July 1, 2017).

¶ 66    In *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21, this court explained that certified questions are questions of law and they may *not* seek an application of law to the facts of a specific case. This court further explained that, if the answer to the question is dependent upon the underlying facts of a case, the certified question is improper. *Rozsavolgyi*, 2017 IL 121048, ¶ 21. This court also stated that Rule 308 should be reserved for exceptional circumstances. *Rozsavolgyi*, 2017 IL 121048, ¶ 21. Further, there must be substantial grounds for disagreement on the question of law. This court explained that

"[t]he substantial grounds for difference of opinion prong in Rule 308 has been satisfied in instances where the question of law had not been directly addressed by the appellate or supreme court (*In re Estate of Kleine*, 2015 IL App (2d) 150063, ¶ 14) or where there is a conflict between appellate districts or with the Illinois Supreme Court (*Johannsen v. General Foods Corp.*, 146 Ill. App. 3d 296, 298-99 (1986))." *Rozsavolgyi*, 2017 IL 121048, ¶ 32.

The court went on to explain that, if there was applicable appellate court case law on the issue, then it was "questionable at best" whether the certified question was proper. *Rozsavolgyi*, 2017

IL 121048, ¶ 32; see also *Hampton v. Metropolitan Water Reclamation District*, 2016 IL 119861, ¶ 39 (Burke, J., specially concurring, joined by Freeman and Kilbride, JJ.) (noting that a certified question is improper when there is "black letter law" on an issue).

¶ 67    It is obvious, then, that the certified question here is improper. The question asked what the mandate in the previous appeal meant for these parties. It is an entirely case-specific question that could not bear on factual situations other than the one before the court.

¶ 68    The question did not ask the court to resolve a pure question of law involving substantial grounds for disagreement. Defendant argued in the trial court that the dispositive fact was that plaintiffs had not filed a posttrial motion in *Crim v. Dietrich*, 2016 IL App (4th) 150843 (*Crim I*). Accordingly, defendant argued that the new trial should be limited to the informed consent count. Plaintiffs argued that the dispositive fact was that the appellate court had issued a general remand. Plaintiffs contended this meant that the new trial should be on both counts. Both parties cited cases in support of their positions. The parties asked the court to decide the case based on the cited law.

¶ 69    When the case went up to the appellate court, the parties made the same arguments they did in the trial court, and the appellate court agreed with plaintiffs. In other words, the appellate court did *not* answer a pure question of law that would allow the case to move forward. Rather, it simply applied the law for the trial court. Defendant then appealed to this court, the parties made the same arguments, and a majority of this court has ruled that defendant's position is correct. But, again, no pure question of law has been answered. At all three levels, the parties presented their arguments and case law in support, and the courts decided how to apply that law to this case. This is what courts do in every case. If this is a proper use of Rule 308, it is hard to see how Rule 308 would be limited to "exceptional circumstances."

¶ 70                                  B. The Majority's Analysis

¶ 71    The majority first claims that, if the certified question were asking the appellate court to clarify what it "intended" or "meant" when it issued its mandate, then the certified question would be improper. *Supra* ¶¶ 17-21. According to the majority, this would be an improper attempt to revest the appellate court with jurisdiction to reconsider the merits of a case previously decided. *Supra* ¶ 21. There is evidence in the record that this is exactly what the parties assumed was the purpose of the certified question. When agreeing to the Rule 308 appeal, plaintiffs' counsel stated that, "I think that there's going to need to be a 308 appeal, an interlocutory appeal so that the Appellate Court can tell us what it wanted when it issued its order."[4]

¶ 72    The majority claims that this is not what the certified question was asking. According to the majority, the certified question was proper because it sought to ascertain the legal effect of *Crim I*'s holding, and this is a question that can be answered only by applying "relevant legal principles and interpretation of the law." *Supra* ¶ 20. In *Rozsavolgyi*, however, this court held

---

    [4]It also seems logical to assume that this was the whole point of the certified question. The appellate court was in no better position than the trial court to apply the black letter law that both sides relied on. The only thing the appellate court could do that the trial court could not was to explain what it intended when it remanded the case. Nevertheless, the appellate court did not give any such insight and just applied the rules for interpreting mandates.

- 15 -

Rule 308 "should be reserved for exceptional circumstances." *Rozsavolgyi*, 2017 IL 121048, ¶ 21. I cannot imagine that what we meant by "exceptional circumstances" was a court simply being asked to apply or interpret the law.

¶ 73 The majority further contends that the certified question is no different from one involving statutory construction and "requests no more of this court, or the appellate court below, than what reviewing courts are regularly tasked to perform: resolve legal questions regarding the effects a prior decision has on a pending case."[5] *Supra* ¶ 21. The majority cites *Hampton*, 2016 IL 119861, ¶ 6, for this proposition. Several problems are evident. First, construing a mandate is nothing like construing a statute or an opinion. Opinions establish controlling precedent for future cases. Statutes have general applicability and may be construed without regard to the facts of a particular case. Indeed, they *must* be construed without regard to the facts of the underlying case for the certified question to be proper. In *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 556-57 (2009), this court considered a certified question arising under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2004)). There was some confusion as to whether the certified question was asking about the conduct of defendants in general, or about the defendants in the specific case before the court. *De Bouse*, 235 Ill. 2d at 557. This court explained that, if the question was referring to the defendants in the case before the court, the question was improper. However, this court determined that the question was asking about the conduct of defendants in general and therefore chose to answer the question. *De Bouse*, 235 Ill. 2d at 557.

¶ 74 A mandate is, by its very nature, specific to the case. It is relevant only to the parties in the case before the court. This question was asking what a specific mandate meant for the specific parties before the court. Additionally, the primary goal of statutory construction is to ascertain and give effect to the intent of the drafters. *In re Michael D.*, 2015 IL 119178, ¶ 9. Here, the majority holds that any attempt to ascertain the intent of the court that issued the mandate would be improper. *Supra* ¶ 21.

¶ 75 Finally, this case is nothing like *Hampton*. Indeed, that case highlights the problem with the certified question in this case. In *Hampton*, the trial court certified the question " 'Does *Arkansas Game and Fish Commission v. U.S.*[,] 133 S. Ct. 511 (2012), overrule the Illinois Supreme Court's holding in *People ex rel. Pratt v. Rosenfield*, 399 Ill. 247 (1948)[,] that temporary flooding is not a taking?' " *Hampton*, 2016 IL 119861, ¶ 1. There, the trial court believed that, before it could proceed, it needed to know whether the relevant precedent from this court was still good law. The certified question was a pure question of law that could be answered without reference to the underlying case. Here, by contrast, the question was asking what the court's mandate in the previous appeal meant for the parties in this specific case. The

---

[5]The majority insists that answering the certified question does *not* require this court to apply the law to the facts of this case. *Supra* ¶ 21. It does not take long for this assertion to crumble, as the majority's entire analysis involves applying law to the facts of this case. See, *e.g.*, *supra* ¶ 33 ("Because the jury made a factual determination on the issue of professional negligence and the circuit court entered judgment based on that determination, plaintiffs' reliance on cases that follow *Keen* and its progeny in support of their argument that no posttrial motion is required is misplaced."); *supra* ¶ 37 ("the record is devoid of plaintiffs making any argument before the circuit court that the informed consent claim was closely intertwined with the professional negligence claim"); *supra* ¶ 39 ("we find little support that plaintiffs raised any challenge to the jury's verdict in the initial appeal").

trial court, however, had all the law it needed to resolve this question and to rule on the motion *in limine*. The majority's assertion that a proper use of Rule 308 is to determine the effects that previous decisions have on the pending case (*supra* ¶ 21) contradicts this court's prior case law on Rule 308 (see, *e.g.*, *Rozsavolgyi*, 2017 IL 121048, ¶ 21).

¶ 76 In my view, the majority also ignores the "substantial grounds for disagreement" requirement. As noted above, this court has found substantial grounds for disagreement when there is a conflict between the appellate court districts or between the appellate court and this court or when the question has never been addressed by the appellate court or this court. In those scenarios, the appellate court clarifies the law for the trial court. Those criteria do not apply here, however. Of course, no court has ever addressed what the mandate in *Crim I* means, nor will any court ever address that question again. The question is entirely case-specific. The appellate court did *not* clarify a point of contested law, and neither does the majority. Both the appellate court and the majority simply apply established law to this case.

¶ 77 Again, we said in *Rozsavolgyi* that, when there is applicable appellate case law, "it is questionable at best whether a substantial difference of opinion exists so as to support certification of this question." *Rozsavolgyi*, 2017 IL 121048, ¶ 32; see also *Hampton*, 2016 IL 119861 (2016), ¶ 39 (Burke, J., specially concurring, joined by Freeman and Kilbride, JJ.) (noting that, when there is "black letter law" on an issue, a certified question is improper). The appellate court relied on the rule that, when a case is remanded with directions to proceed in conformity with the opinion, then the trial court should examine the opinion to determine how to proceed. See *Crim v. Dietrich*, 2018 IL App (4th) 170864-U, ¶ 40 (*Crim II*) (citing *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 353 (2002)). This is a case-specific inquiry, and no general rule of law can be set forth. Accordingly, I would decline to answer the certified question.

¶ 78 III. Merits

¶ 79 For the reasons set forth above, I would not answer the certified question. Nevertheless, I will respond to the majority's analysis because I believe it rests upon a fundamental error, confusing a party's forfeiture of an argument with a reviewing court's power to grant relief.

¶ 80 The majority states that it finds "merit in defendant's argument that the ruling in *Crim I could not* require a new trial *de novo* on all claims due to plaintiffs' failure to challenge the jury's verdict pursuant to the requirements of section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202 (West 2016))." (Emphasis added.). *Supra* ¶ 24. The majority acknowledges, however, that section 2-1202 is merely a forfeiture statute. *Supra* ¶ 12 n.1. The statute does not purport to limit the appellate court's jurisdiction, nor could it. As the appellate court observed in *In re Marriage of Lentz*, 73 Ill. App. 3d 93, 95-96 (1979):

"The foregoing constitutional provisions and the decisions of the supreme court in *People ex rel. Stamos v. Jones* (1968), 40 Ill. 2d 62, 237 N.E.2d 495, and *People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878, make clear that the legislature no longer has power to determine the jurisdiction of the appellate court. In *People ex rel. Stamos v. Jones*, the court held invalid section 121-6(b) of the then existing Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1967, ch. 38, par. 121-6(b)), purporting to prohibit the stay of a sentence for the conviction of a forcible felony. The rationale of the decision was that the Judicial Article of 1962 'placed responsibility for rules governing appeal in the Supreme Court, and

- 17 -

not in the General Assembly' (40 Ill. 2d 62, 66, 237 N.E.2d 495, 498). In *Taylor*, the court reiterated that the legislature had no right to participate in determining the jurisdiction of the appellate court to entertain appeals from the circuit court. *Taylor* held invalid the then existing section 109-3(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1967, ch. 38, par. 109-3(e)) purporting to make unappealable an order suppressing evidence made at preliminary hearing."

¶ 81 Section 2-1202 is merely a forfeiture statute, and it does not restrict the appellate court's power to grant relief. As this court has observed many times, forfeiture is a limitation on the parties and not upon the jurisdiction of a reviewing court. See, *e.g.*, *Klaine v. Southern Illinois Hospital Services*, 2016 IL 118217, ¶ 41 (noting that forfeiture is a limitation on the parties and not on the court and explaining that we may "overlook any forfeiture in the interest of maintaining a sound and uniform body of precedent").

¶ 82 Defendant claims that forfeiture for failure to file a posttrial motion is an exception to the above rule and that a court cannot overlook a forfeiture where the General Assembly has barred litigants from obtaining relief in a court of review. Defendant goes so far as to say that no Illinois court has *ever* determined that it was authorized to order a new trial of a jury's verdict in the absence of a posttrial motion. In support, defendant cites *American National Bank & Trust Co. of Chicago v. J&G Restaurant, Inc.*, 94 Ill. App. 3d 318, 319 (1981). In that case, the defendant failed to file a posttrial motion following a jury trial, and the appellate court stated that, because of the defendant's forfeiture, it was "legally unable to decide any of the substantive issues raised on appeal." *American National Bank*, 94 Ill. App. 3d at 319.

¶ 83 Defendant is incorrect. In *Schutzenhofer v. Granite City Steel Co.*, 93 Ill. 2d 208 (1982), this court awarded the defendant a new trial even though the defendant had not filed a posttrial motion seeking a new trial. The plaintiff had obtained a pretrial partial summary judgment on the issue of whether defendant was a common carrier engaged in interstate commerce. *Schutzenhofer*, 93 Ill. 2d at 210. Defendant had denied its interstate status and argued that the plaintiff's exclusive remedy was in the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, ¶ 138 *et seq.*). Defendant raised this issue at several points in the pretrial process and during the trial and later raised the issue in a motion for judgment notwithstanding the verdict. *Schutzenhofer*, 93 Ill. 2d at 210. The defendant did not file a motion for a new trial, and it conceded in its appellate court brief that it had waived any right to a remandment or a new trial on any issue. See *Schutzenhofer v. Granite City Steel Co.*, 101 Ill. App. 3d 683, 686-87 (1981). This court acknowledged that the defendant was seeking only a judgment as a matter of law that it was not engaged in interstate commerce. *Schutzenhofer*, 93 Ill. 2d at 213. This court explained, nevertheless:

"[T]he scope of our review is not confined merely to the issues preserved for appeal. (See *Inolex Corp. v. Rosewell* (1978), 72 Ill. 2d 198, 201. See also *People ex rel. Peoria Civic Center Authority v. Vonachen* (1975), 62 Ill. 2d 179.) This court has interpreted our own Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7)), which expresses the waiver doctrine, as 'an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court.' (*Hux v. Raben* (1967), 38 Ill. 2d 223, 224.) Moreover, Rule 366, which has been held analogous to the plain error doctrine in criminal review (38 Ill. 2d 223, 224), provides: '(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it

deems just *** (5) give any judgment and make any order *** and further orders and grant any relief *** that the case may require.' " *Schutzenhofer*, 93 Ill. 2d at 210-11.

The court then determined that the appropriate remedy was a new trial, even though the defendant had not sought that relief. *Schutzenhofer*, 93 Ill. 2d at 213.

¶ 84　　*Schutzenhofer* establishes (1) that this court has indeed ordered a new trial in the absence of a posttrial motion, even when a party has acknowledged that it was not asking for a new trial and had forfeited the right to ask for one, and (2) that the same considerations allowing this court to ignore forfeitures for other reasons apply equally to forfeitures for failure to file a posttrial motion. See also *Johnson v. Transport International Pool, Inc.*, 345 Ill. App. 3d 471, 474 (2003) ("Our supreme court has held that procedural default, including forfeiture by failure to file a posttrial motion, does not limit the jurisdiction of the reviewing court.").

¶ 85　　The appellate court unquestionably had *jurisdiction* to order a new trial on the negligent delivery claim. See Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) ("The appeal is initiated by filing a notice of appeal. No other step is jurisdictional."). The majority claims that the plaintiffs did not challenge the jury's verdict in their notice of appeal and in their initial appellate brief. *Supra* ¶ 39. While this may be a fair description of plaintiffs' brief, it is beyond question that the plaintiffs stated in their notice of appeal that they were appealing the judgment entered on the jury's verdict. As we explained in *Schutzenhofer*, the court clearly had the *power* to order the new trial. Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) gives the reviewing court the power, in all appeals, to grant any relief that the case may require.

¶ 86　　The majority claims that there is "no authority *** for the proposition that a notice of appeal or an appellate brief removes the statutory requirement of section 2-1202." *Supra* ¶ 39. The majority further claims that, if the court were to adopt such an interpretation, it would render section 2-1202 meaningless. *Supra* ¶ 39. The majority has the balance of power backwards. The legislature cannot restrict the jurisdiction of the appellate court, nor can it undermine the powers of the reviewing court granted by this court in Rule 366(a). Recognizing this fact in no way renders section 2-1202 meaningless. Rather, it just acknowledges what this court has said for decades: forfeiture is a limitation on the parties and not on the jurisdiction of a reviewing court. *Klaine*, 2016 IL 118217, ¶ 41.

¶ 87　　I emphasize that this dissent should not be read as questioning the significant policy justifications behind the posttrial motion requirement set forth in the majority opinion, nor should it be read as suggesting that forfeitures of this kind should be excused lightly. This discussion is only intended to point out that the majority errs in endorsing defendant's argument that a reviewing court does not have the *authority* to order a new trial in a jury case in the absence of a posttrial motion.

¶ 88　　The problem with the majority's position can be identified by changing the facts of this case just slightly. Say that the plaintiffs failed to file a posttrial motion, but this was simply a result of a good-faith, but mistaken, reliance on cases holding that no posttrial motion is required when there has been a directed verdict. And then say that plaintiffs argued extensively in their appellate brief that they were entitled to a trial *de novo* because the erroneous directed verdict had tainted everything that happened after it. Defendant responds in her response brief, and plaintiffs respond to those arguments in their reply brief. The appellate court in *Crim I* agrees with plaintiffs that the erroneous directed verdict tainted everything that came after it and that plaintiffs accordingly did not receive a fair trial on the negligent delivery claim. The

court thus determines that the interests of justice require a new trial on both issues. According to defendant and the majority, the appellate court would be *powerless* to grant relief in that situation. Any such notion, however, is categorically rejected by our supreme court rules and our case law.

¶ 89　　　The certified question, then, is not answered correctly by stating that the appellate court in *Crim I* could not have remanded for a trial *de novo* on both claims because plaintiffs failed to file a posttrial motion. Whether plaintiffs forfeited their right to ask for a new trial on the negligent delivery claim by failing to file a posttrial motion is solely a *Crim I* issue. It is too late to answer that question now. We may not revisit *Crim I* after that case became final. The only issue in *Crim II* was the legal effect of the general mandate that the appellate court issued in *Crim I*. By revisiting *Crim I* after that case became final, the majority has allowed defendant an impermissible collateral attack on *Crim I*.

¶ 90　　　　　　　　　　　　　　　　IV. Conclusion

¶ 91　　　I would not answer the certified question. In my view, this court improvidently granted the petition for leave to appeal, and the certified question was not a proper use of Rule 308. I also disagree with the majority's decision on the merits. In answering the certified question, the majority uses an analysis at odds with this court's rules and case law and mistakenly affords the legislature the power to restrict the authority of reviewing courts to grant relief on forfeited claims. Accordingly, I respectfully dissent.

¶ 92　　　JUSTICE MICHAEL J. BURKE took no part in the consideration or decision of this case.